EDWIN MOODY v. GEORGE W. FARR'S Lessee.

1. EJECTMENT: LEGAL TITLE ESSENTIAL TO ENABLE PLAINTIFF TO RECOVER.—It is well settled, that where a party has purchased land, and paid the purchase-money, and has taken only a bond for title, he has a mere equitable title, and must go into equity to divest his vendor's title; and until such title be conveyed, he cannot recover in ejectment. See Thompson v. Wheatly, 5 S. & M. 506; Wolfe v. Dowell, 13 Ib. 106.

2. SAME: DEFENDANT CANNOT DEFEND ON EQUITABLE TITLE.—There is no difference in principle between the position of a party holding an equitable title, and defending upon it in an action of ejectment, and that of a party claiming as plaintiff under such a title; and hence, a complete equitable title cannot be set up by the defendant in possession, to defeat a recovery in an action at law by the party holding the legal title.

APPEAL from the Circuit Court of Hinds county. Hon. J. S. Yerger, judge.

In 1846, George W. Farr, the plaintiff, instituted his action in

the Circuit Court of Hinds county, for the recovery of the possession of certain lands situated in that county. Moody, the appellant, appeared and made affidavit, that he was landlord of the tenant in possession, and was admitted to defend, on his entering into the usual consent rule.

The trial of the cause having been stayed by injunction, it was not disposed of until the May Term, A.D. 1856, of the court below.

On the trial, it appeared from the plaintiff's evidence, that the premises in controversy were a portion of the two sections of land donated to the State of Mississippi, by Congress, for a seat of government. That Farr purchased the premises from the State commissioner in 1833, and received from him a certificate of purchase, and a patent from the State in 1844, conveying the land to him in fee simple. Farr also gave in evidence the transcript of two suits in the Superior Court of Chancery, instituted by Moody against him, in which Moody attempted to set up an equitable title to the land, based upon a title bond executed by Farr to one Shields, and a subsequent sale of the land by the sheriff under an execution against said Shields, and at which sale Moody was the purchaser; and Moody claimed in those suits, that at the time of the sheriff's sale before mentioned, Shields had paid all the purchase-money due Farr, under the sale, as evidenced by the title bond. These suits were severally decided against Moody, and upon appeal, the High Court affirmed the decisions. Proof that Moody was in possession, and that the premises were situated in Hinds county, was also made.

Defendant then offered in evidence certain documents and parol testimony, as stated in the opinion of the court. This evidence being extended, upon the objection of the plaintiff, the defendant excepted. The plaintiff had verdict and judgment. The defendant moved for a new trial, which being overruled, he appealed.

*John D. Freeman,* for appellant.

Farr brought an action of ejectment in the Circuit Court, and recovered a judgment. The defendant moved for a new trial, which was overruled, and to this ruling of the court, the plaintiff in error excepted, and filed his bill of exceptions, containing all the evidence.

Upon looking into the evidence, it will be seen that Farr bought the town lot in controversy, at the sale of town lots in the city of Jackson, by the State commissioner, at a sale in the year 1833, for which he gave his three promissory notes, payable in one, two, and three years, and took a certificate of purchase. This lot was a portion of two sections of land donated to the State of Mississippi for a seat of government. By statute of February 26th, 1833, a State commissioner was authorized to sell the lots, laid out under a former statute, and on execution of the notes for the purchase-money, with approved security, was authorized to make to the purchaser of the lot or lots "a certificate of purchase," which, by statute of December 18th, 1833, was required to be "admitted and received as evidence of title in all courts of law or equity in this State, in all controversies that may arise relative to said lots." Hutch. Code, 104, art. 9. That this certificate of purchase gave Farr a legal title to the lot, has been held by this court in a similar case. See *Lindsey* v. *Henderson*, 25 Miss. Rep. 503. It is true, that the State reserved her vendor's lien, by the same statute; but in this case, Farr paid the purchase-money and received a patent, which confirms his title from the date of the certificate of purchase. Soon after his purchase from the State, Farr sold the lot to John Shields, for the sum of $——, and gave him a bond for title, when the purchase-money was paid, and delivered the possession of the lot to Shields. Previous to 1838, Shields paid Farr the purchase-money for said lot, but had not received a deed from Farr. In 1838, the lot was levied upon by virtue of several judgments and executions thereon, against Shields, and under these executions, the lot in controversy was sold to Moody, who took immediate possession of the same, and has held it ever since. On the trial below, the plaintiff, Farr, read his patent from the State, bearing date July 11th, 1844, being nine years subsequent to the date of his certificate of purchase, and six years after the date of Moody's purchase at sheriff's sale. To rebut this evidence, Moody offered to prove the sale of the lot by Farr to Shields, the payment of the purchase-money by Shields to Farr, the possession of the lot by Shields, and the subsequent sale of the lot, under judgment and execution against Shields, to Moody, and Moody's possession under the latter sale; which evidence was ruled out by the court

below, and Moody now insists that the evidence offered was legal testimony, and should have been admitted by the court to the jury. It was insisted in the court below, and is now urged here, that the patent from the State gave Farr a legal title, and that the evidence rejected by the court below was, at most, evidence of "a mere equity," which was no defence at law in an action of ejectment; and several authorities are cited, to show that "mere equities" can only be enforced in chancery. While I do not deny this general rule of law, in another class of cases, I deny its application to the proof in this cause, and insist further, that the rule is subject to exceptions. The defendant, Moody, was in possession of his equity, and did not need the aid of chancery to give him relief. The first question presented by the proof is this: Had John Shields such property in the lot, as was subject to the lien of a judgment against him, and could the same be sold under an execution at law?

Our statute of judgment liens provides: "That in all cases the property of the defendant shall be bound and liable to any judgment, that may be entered up from the time of entering such judgment." How. & Hutch. Code, 626, sec. 43. The term "property," as used in this statute, includes not only personal estate, but every estate, interest, and right in lands, tenements, and hereditaments. See 3 Tomlin's Law Dic., title Property, and How. & Hutch. Code, 726, sec. 28. Our statutory definition corresponds with the common law.

The property of Shields in this lot, consisted of the possession and use of the same, under a contract of sale and a bond for title, when the purchase-money was paid. The purchase-money had been paid, but no deed executed. Shields's equity was, therefore, complete, coupled with the possession.

In New York, the word "estate" is held to signify the quantity of interest which a person has, from absolute ownership down to naked possession. *Jackson* v. *Parker*, 9 Cow. 81. And by the same authority, it was held that it is the possession of lands which renders them valuable, and the quantity of interest is determined by the duration and extent of the right of possession.

The possession of lands is an interest which may be sold on an execution at law against the possessor. 3 Caines, 189.

An equitable right of possession will support an action of eject-ment.   1 Watts & Serg. 9.

An equitable interest, coupled with possession, may be sold on an execution at law.   9 Cow. 81; 5 Blackford, 85.

Possession of land is prima facie evidence of title, and no title is complete without it.   7 John. R. 205, 206.

A person in possession of land, under a contract for the purchase and sale of it, has an interest in the land which may be sold on execution, and the purchaser at such sale may recover the posses-sion of the same by action of ejectment; and the possession may be recovered of any one who takes that possession, with notice of the judgment.   18 John. R. 94; 9 Cow. 85.

These latter decisions were made under the New York statute of judgment liens, which provided, " that land, tenements, and real estate of every defendant, in a judgment obtained in a court of record, are liable to be sold; and such judgment is a lien upon them."   1 N. Y. Rev. Laws, 500 ; 9 Cow. 80.

The term property, in our statute, has a broader signification than the terms of the above statute; and if an equitable interest, with the right of possession, could be sold under that statute in New York, there can be no doubt that the same thing can be done under our statute.

But if Shields had no such interest in the lot as could be sold under execution for his debts, then Farr must have had an interest that could be sold for his debts in the same way.   Let us look at the question in this light.   Farr, at the time of the execution sale, had parted with his possession to Shields, and had agreed to make a deed of warranty when the purchase-money was paid.   This con-dition had been performed by Shields.   Farr stood in the position of a mortgagee, holding a legal title to receive the payment of the purchase-money, and bound to convey his title on payment of the same.   Dollahite v. Orne, 2 S. & M. 592; 13 S. & M. 108.   Could the interest of a mortgagee be sold under an execution against him ?

In Richards v. Sims (Barnard's Ch. Rep. 60), Lord Hardwick said, that courts of law now regard a mortgage as a security for a debt, and not an estate in fee, and that a discharge of the debt, even by parol, was considered as a discharge of the mortgage; so

that in an ejectment upon the mortgage, evidence that the debt was satisfied, would defeat the estate in the lands; which shows that the debt is the principal, and the land an accident only. The real nature of a mortgage in the equity view of it, has been repeatedly recognized in courts of law, since the time of Lord Hardwick, and it has been said and repeated, that it was an affront to common sense to say that a mortgagor in possession was not the real owner; that the mortgagee, notwithstanding the form, has nothing but a chattel, and the mortgage is only a security. 2 Burr, 969; *Martin* v. *Mowlin*, Doug. 630 ; *The King* v. *St. Nichols*, Doug. 445; *Jackson* v. *Willard*, 4 Johns. R. 41; 1 Caines Cases in Error, 47. In *Jackson* v. *Willard*, it was held that the sale of the interest of the mortgagee under execution, was null and void. In New York, the mortgagor is deemed to be seised in fee, nothwithstanding the mortgage. Per Kent, C. J., 6 Johns. R. 294; 7 Mass. 139. And when the mortgagor conveys the land mortgaged, with covenant of seisin, before foreclosure or possession taken by the mortgagee, there is no breach of covenant. *Sedgwick* v. *Hollenback*, 7 Johns. R. 376. And the widow of the mortgagor is entitled to dower out of the mortgaged premises. The English precedents are to the contrary; but the court observe: "We have, in this State, gone greater lengths than the precedents in the English books, towards the recognition of the mortgagor's estate in law. It is here the subject of sale on execution as real estate, and on the other hand, the interest of the mortgagee, before entry or foreclosure, is not the subject of sale. . . . . . The plain and necessary rule is to allow the widow of the mortgagor her dower, as the heir or purchaser takes the estate subject to the mortgage. *Collins* v. *Torry*, 7 Johns. R. 278; *Hitchcock* v. *Harrington*, 6 Johns. R. 290.

So completely is the mortgagor regarded as the owner of the freehold, that he may maintain *trespass quare clausum fregit* against the mortgagee, for entering on the land and cutting trees ; and if the defendant plead *liberum tenementum*, the mortgagor may reply that the freehold is in himself. *Runyan* v. *Mersereau*, 11 Johns. Rep. 534. This court has sanctioned the same doctrine. 5 S. & M. 506, 730; 2 Ib. 592; 13 Ib. 108. In Mississippi, the widow is by statute, endowed of the trust property of her deceased

husband. Hutch. Code, 622, sect. 7. In *Thompson* v. *Wheatley*, 5 S. & M. 499, it was held that when a person purchases a legal title with a knowledge of the outstanding equitable title, he is but a trustee for the holder of the equitable title.

The statutes of Mississippi, in regard to judgment and mortgage liens, are therefore similar to those of New York, and the decision of the courts of New York on those statutes must necessarily prevail here.

In *Peltz* v. *Clark*, 5 Peters R. 483, Chief Justice Marshall said : " It is undoubtedly well settled as a general principle, that a court of law will not permit an outstanding satisfied mortgage to be set up against the mortgagor. . . . . . This rule must then be founded on an equitable control,. exercised by courts of law over parties in ejectment." See also 5 Iredell, 525 ; 17 Vermont R. 674 ; 21 Wend. 468.

In Connecticut and Massachusetts, equitable interests are liable to execution at law, by statute. *Punderson* v. *Brown*, 1 Day. 93 ; 7 Mass. 139 ; 9 Ib. 103. In Mississippi we have a similar statute. How. & Hutch. Code, 349, sect. 29. And the sheriff, on sale of such an equity, is required by the statute to convey to the purchaser all the right, title, interest, and claim of the defendant in and to the lands sold, either in law or equity. Ib. 644.

On these authorities, I submit, that Shields had a legal and an equitable property in the lot in controversy. That it was the subject of sale and delivery, under execution at law against him, and that the purchaser, Moody, took all the title of Shields at law and in equity. *Thompson* v. *Wheatley*, 5 S. & M. 506. The possession of land is the subject of sale and delivery, by the sheriff, under judgment at law, and the execution of the sheriff's deed under such statutes, necessarily conveys a legal title, to be protected by a court of law, as well as of equity. *Brown* v. *Weast*, 7 Howard's Miss. Rep. 181. Inasmuch as Farr could not have recovered in ejectment against his vendee and mortgagor in equity, Shields, he cannot recover in ejectment against Moody, who holds Shields's title and the possession of the lot.

The fact that Farr obtained a patent from the State, in the year 1844—being nine years after the sale by Farr to Shields, and six years after the purchase and possession by Moody—gives Farr no

legal advantage. That patent is simply evidence that Farr has paid off the outstanding lien in favor of the State against himself, and the land he sold to Shields; and the patent therefore inures to the benefit of Moody, as the vendee of Shields, at execution sale. See *Dease* v. *Moody*, Opinion Book G., where Dease procured a patent, after his sale of the lot, and claimed title under it.

But it is insisted that Moody's defence can only be made in a court of equity. Why? Because the legal title alone is in issue in ejectment. There is an exception to this rule where a vendor, holding the legal title as a security for the purchase-money, brings his ejectment against his vendee or the assigns of said vendee in possession of the land, which is the position of Moody here: *Brown* v. *Weast*, 7 Howard, 181; and in these cases, where the purchase-money has not been paid at the time of suit brought, the money may be tendered at any time before a final sale under a judgment of foreclosure, or a final recovery in ejectment. See *Peltz* v. *Clarke*, 5 Peters, 182, 183; 21 Wend. 468; 17 Vermont, 674, and authorities there cited. In fact, if Moody should fail to make his defence at law, he would not be heard to make it in equity, because equity will not take jurisdiction where the defence may be made at law. The procurement of the patent by Farr, when his vendee and assigns were entitled to the patent, was a fraud upon Moody, and this fraud may be proved at law.

It is further insisted that Moody is precluded from this defence, because of the dismissal of his two bills of discovery in chancery in relation to this land.

These bills were filed pending the suit at law, to procure the discovery from the plaintiff at law, of the payment of the whole of the purchase-money by Shields to Farr. On final hearing the proof was adjudged insufficient, and the bills dismissed without prejudice. The first bill was filed pending an action of forcible detainer in the Circuit Court, and after the bill was dismissed, the action at law was tried, and Moody obtained a judgment at law against Farr for the possession. Farr then brought ejectment, and Moody filed another bill, charging Farr with a fraudulent concealment of the truth in answer to his first bill. This decree left the suit of Farr to progress at law according to the rules of evidence in that court. There was no decree enjoining Moody from making any de-

fence known to a court of law in similar cases. In fact the bills may have been dismissed because there was a good defence at law. But it is further insisted, that this court have repeatedly decided, that a merely equitable title cannot be set up at law, as a defence in a case of ejectment. I might admit this proposition to be true, without injury to my client's cause. But a review of the decisions of this court, relied upon by opposing counsel, will result in a full vindication of the position already assumed by me in this argument.

The first in the series of cases relied upon, is *Thornhill* v. *Gilmer*, 4 S. & M. 153. This was a trial of the right of property to a slave, covered by a deed of trust. The court decided that "the legal effect and operation of a mortgage of personal property after condition forfeited, was to invest the mortgagee with an absolute interest in the property mortgaged." This decision is based upon the principle, that the mortgagee of goods and chattels holds the chattel interest, until payment or tender of payment by the mortgagor. 1 Pick. 400. So the mortgagee of real estate, out of possession, has but a chattel interest. 4 Johns. R. 43.

In *Thompson* v. *Wheatley*, 5 S. & M. 505, West bought of Kyll (and paid for) a lot of ground, but had no deed. Morgan & Co. obtained a judgment against West, under which the lot was sold by the sheriff, who conveyed to Wheatley. But before the execution sale, Walker sold the lot to Thompson, who was in possession of the same. Wheatley, who bought at execution sale, sued Thompson in ejectment, and recovered a judgment in the Circuit Court. Thompson appealed, and the judgment of the court below was reversed, and cause remanded, that plaintiff might dismiss it, and proceed in equity.

Thompson was in possession under sale and delivery from West, who had paid the purchase-money, but Wheatley had purchased West's equitable interest in the land, under an execution sale, emanating on a judgment against West, older than the sale from West to Thompson; and the court say that this execution sale carried the title, but the purchaser not being in possession, must resort to equity to obtain possession. In the case at bar, the purchaser at execution sale is in possession already, and hence, he has no occasion for the aid of a court of equity to obtain possession. The

decision is in favor of Moody, on the facts contained in this record. Moreover, *Brown* v. *Weast*, 7 How. 181, is quoted and affirmed. In the case of *Brown* v. *Bartee*, 10 S. & M. 268, the facts were these : On the 21st February, 1839, Turner made a deed of trust to Wade, by which he conveyed the lots in question to secure the payment of a debt of $15,000, due Bartee. On the 9th of April, 1839, a judgment was rendered against Turner. In May, 1839, Turner made an absolute conveyance of the lots to Bartee. In 1842, Brown bought the lots at execution sale, under the judgment of the 9th of April, 1839, against Turner. In 1842, Wade, the trustee, sold the lots under the deed of trust, and Bartee became the purchaser, the deed of trust being the first incumbrance, and the judgment the next. Brown was in possession under the judgment, and Bartee sued in ejectment, on his title from the trustee, and recovered a judgment in the Circuit Court, which was affirmed by this court. Sharkey, judge, said the deed of trust conveyed the legal estate to Wade, and the equitable estate to Bartee, and hence the judgment against Turner found no estate in him on which the lien of a judgment could rest.

This court, in a subsequent review of that case, say : The whole equitable interest was in Bartee, the creditor of Turner, and the whole legal interest in Wade, the trustee ; and the defendant in the judgment had neither a legal nor an equitable estate. 13 S. & M. 107. The case of *Watson* v. *Dickens*, 12 S. & M. 608, was an action of replevin for corn, cotton, and potatoes, and raises no question applicable to the present controversy. In *Wolf* v. *Dowell*, 13 S. & M. 103, the case of *Thompson* v. *Wheatley*, is quoted and affirmed. There the purchaser at execution sale was not in possession, and he was declared to have a remedy in chancery to get possession, and also to compel the holder of the legal title to make a deed of conveyance ; and the court further say, that "where the debt is fully paid, the mortgagee or trustee holds but a naked legal title for the debtor, who has the whole beneficial interest, which is subject to sale." 13 S. & M. 108. The case of *Brown* v. *Bartee* is also affirmed, and the court say these principles are decisive of the present case.

In *Dixon* v. *Porter*, 23 Miss. 84, the plaintiff in ejectment showed a patent from the United States, and the defendant offered

inferior evidence, a tax collector's deed, &c. ; but the court say that if the patent from the Government had been absolutely void, for want of title in the Government or authority in its officers to issue the patent, the defence could be made at law as well as in equity. The rule seems to be, that where the plaintiff in ejectment has a naked legal title without the right of possession, and the defendant has the possession, the right of possession and an equitable right to have the legal title, the plaintiff in ejectment cannot recover. *Brown* v. *Weast,* 7 Howard, 181.   And such is the attitude of the plaintiff in error in this case.

The brief of opposing counsel refers to no case, either in our own court or elsewhere, that denies to a defendant the defence set up by Moody in the court below.

In *Wolf* v. *Dowell,* 13 S. & M. 103, this court say that in the class of cases where the vendee of lands holds a bond for title on the payment of the purchase-money, " the original vendor stands in the situation of mortgagee, and the vendee in that of a mortgagor :" *Dollahite* v. *Orne,* 2 S. & M. 592; and that "the principle of these cases extends to mortgages, to the sale of an equity of redemption, and to the interest of the grantor in a deed of trust."   13 S. & M. 108.   No case has been cited, where a naked legal title has prevailed in ejectment over a perfect equity, and possession in the defendant; and why should this folly be committed, when the defendant if ousted of possession, could apply to chancery, pending the action at law, and compel the plaintiff to make him a legal title ? The proof shows, that this case belongs to a class of cases where the equitable rights of the defendant may be asserted as well at law as in equity.   *Brown* v. *Weast,* 7 Howard, 181.

In regard to matters of equity jurisdiction, the laws of the several States of this Union differ in many respects from each other, and from the established rules of equity in England, because our State legislatures claim and exercise the right of extending the concurrent jurisdiction of courts of law to matters of equity, and vice versa.   1 Stor. Eq. Jur. sect. 80.   In *Farrish* v. *The State,* 4 How. Miss. 170, the chancellor decided that the State could not be sued in chancery on an open account, because it was not a matter of equity jurisdiction in England ; but upon appeal to this court, the decree of the chanceller was reversed, and the court held that

Moody v. Farr's Lessee.

" the boundary of jurisdiction between the Chancery Court and courts of law is easily and readily controlled by the law. It depends on arbitrary rules, which cannot for that reason be immutable, and accordingly, the subjects of power in the Chancery Court have been at different times modified or portioned out to the courts of law." In a recent case in this court, it was held that, by statute of 1824, the Probate Court had concurrent jurisdiction with a court of equity, to entertain a bill against an executor or administrator for a specific performance of a contract for the sale of land, made by the testator or intestate in his lifetime, where the purchase-money had been paid and no deed executed. Other innovations upon the jurisdiction of courts of equity might be cited, in this State and elsewhere; but the foregoing are deemed sufficient to elucidate the principle contended for, viz., that the legislature have the power to say what rights of property, either legal or equitable, may be sold under execution at law, and when such rights are susceptible of delivery by the sheriff and enjoyment by the purchaser, his possession and title may be defended as well at law as in equity. *Brown* v. *Weast*, 7 Howard, 181; 1 Stor. Eq. Jur. § 80.

Lastly. Since the commencement of this suit the plaintiff in ejectment, Farr, has again sold the lot in controversy to Graves and Mizell, and they have sold a portion of the same to D. Shelton. The deed of conveyance from Farr, acknowledges the receipt of the purchase-money, and is in all respects a deed of bargain and sale, conveying all the beneficial interest of Farr to other persons, and Farr agrees to make a legal conveyance in fee, when required by the vendees. It is clear, therefore, that Farr has parted with all his beneficial interest in the land, and is not entitled to the possession of the lot. If Moody does not own the beneficial interest carrying the right of possession, then Graves, Mizell, and Shelton do, and Farr is a trustee of the naked legal title, without any interest, and therefore cannot recover in ejectment.

*D. Shelton*, for appellee.

A reargument of this cause was ordered on the question, whether the evidence offered by Moody for the purpose of showing full payment by Shields to Farr was admissible. We have two grounds of objection to the evidence.

1st. That in the action of ejectment, this evidence tended only to prove an equitable right in Moody, but did not tend to prove a legal title in Moody or out of Farr.

There was not on the trial below, there has never been in any of the litigation, either in law or in equity, any pretence that Moody held a legal title, or that Farr had ever been divested of the legal title. Moody's only purpose in offering proof of payment by Shields to Farr, was to make out an equitable right in bar of Farr's legal title. But in an action of ejectment, only the legal title is involved. The court cannot in that action try a mere equity, even if it were not a doubtful one. That has been decided more than once by this court. *Thompson* v. *Wheatley*, 5 S. & M. 505. The plaintiff proved a purchase as the property of West at execution sale; that West had bought and paid for the lot before the date of the judgment under which the plaintiff bought. That after that judgment, West sold the lot to Thompson, the defendant, and informed Thompson of the judgment, and thereupon Thompson took a deed from Kyle, the vendor of West, for the very purpose of avoiding the judgment lien West held under a title bond from Kyle, and assigned that to Thompson. The court decided that plaintiff, by his purchase at execution sale, took a perfect equity, and was entitled to recover the property in equity.

2d. That in ejectment the legal title alone is put in issue, and therefore, the plaintiff cannot recover in ejectment.

*Wolf* v. *Dowell*, 13 S. & M. 103. The plaintiff in ejectment, proved a purchase at execution sale as the property of Haring and Rapelye, under a judgment rendered Nov. 6th, 1837.

Defendant proved that on the 7th Jan. 1837, Rapelye conveyed the property to trustees, to secure a debt due Haring. The debt secured by this trust was paid before the sale under execution, but no release had been made on the record. The court decide, 1st, Until the release was entered, or some other mode pursued to vest him with the legal title, the mortgagor, even after payment of the debt, has but an equity. 2d. That such equitable right may be sold under execution. 3d. That an action of ejectment cannot be sustained on the sheriff's deed ; that the purchaser gets but an equity, which must be enforced in chancery.

*Dixon* v. *Porter*, 23 Miss. R. 85. The plaintiff in ejectment held a patent, dated in 1845. Defendant sought to read a tax deed, dated in 1829, and also his register's certificates of entry, dated in 1815. The tax deeds and certificates of entry were excluded. The Supreme Court say : "In ejectment there is nothing but the legal title involved. The papers excluded by the court below were at most evidence only of an equitable title, and were, therefore, properly held inadmissible. Where the patent is sought to be made subservient to a superior equity, there must be some direct proceeding, either at law or in chancery, to make the legal title yield to the preferable equity. It cannot be done collaterally in the action of ejectment."

American and English authorities on the point can be cited almost indefinitely. I shall simply cite them : they leave not a doubt on the question. 2 John. R. 86, 226; 2 John. Cas. 321; 9 Cow. 88; 2 Rand. 422; 9 Serg. & R. 87; Pet. C. C. R. 429; 8 Cow. 581; 9 John. R. 60; 8 Ib. 487; 3 Ib. 422; Ohio Cond. R. 356; 4 Wend. 309. And I might add many other American cases. Adams on Eject. 32; 7 T. R. 43; 8 T. R. 2, 118; 2 T. R. 696; 1 H. Black. 447; 5 East, 138; 6 Ves. Jr. 39. And I might add many other English cases.

But I am answered that the case of *Brown* v. *Weast*, 7 How. R. 184, is adverse to this doctrine. The decision in that case is put upon this principle,—that the merely formal title of an express trustee shall not be set up against the cestui que trust, because from the nature of the two rights the cestui que trust is to have the possession. It is so stated in the opinion in that case, and this court has twice declared, that beyond that principle the case does not go. 5 S. & M. 506; 23 Miss. R. 86.

The above principle may in the abstract be correct. It was once so held in England. See note to 1 T. R. 758. It has never been so held in England since, but the converse thereof has been repeatedly held. 2 T. R. 696; 7 Ib. 43, 47; 8 Ib. 2, 122.

The principle now established in England, and also in the United States is, that the only way in which the cestui que trust can be assisted in an action of ejectment is, by permitting the jury in certain cases to presume a conveyance. See the cases last cited, and

also 2 John. Cas. 325; 2 John. R. 226. But when the case precludes any such presumption, the legal title is peremptory, and must prevail. Ib.

The principle above abstracted from *Brown* v. *Weast*, if correct, may have been applicable to that case. It certainly is not applicable to this. That principle has only been applied where the trust has been created for a particular purpose, and that purpose has been satisfied, or where the purpose of an existing trust has been inconsistent with the dispossession of the cestui que trust, or where the trust has been in no way connected with the litigating parties. It was never applied where the trust itself was the thing involved in the litigation. See 1 T. R. 758, note, and also 2 John. Cas. 325.

To decide that the principle is applicable where the existence of the trust, or the relative rights of the trustee and cestui que trust, is the very question in litigation, is practically to give to courts of law concurrent jurisdiction of all equitable claims that may in any way result or arise upon the complicated doctrine of expressed resulting or implied trusts. See 2 John. Cas. 324, 325; 2 John. R. 226; 5 S. & M. 505.

Second. But suppose I were to abandon the foregoing argument, and admit that an equitable right, might in an action of ejectment, defeat the legal title, still the evidence of that equitable claim would be totally inadmissible in the present case. The evidence offered would only tend to prove an equitable right, not a legal title. The inquiry would still be, was Moody's equitable claim paramount to Farr's legal title? That question has been decided between Farr and Moody by the Chancery Court, and by this court, on appeal from chancery; and that decision is conclusive between the parties. 27 Miss. R. 788.

I admit that if Moody had, in the ejectment, offered evidence of a legal title, the decision of the chancery suits would not have precluded him, for the reason that his legal title had not been involved in the chancery suit. But there is no pretence to say that Moody offered evidence of a legal title. He only offered evidence of the same equitable claim upon which he had filed his bill in chancery. That court decided, on a final hearing on the merits, that because he had no right, title, or interest in the lot, and

Moody *v.* Farr's Lessee.

was entitled to no relief, his bill be dismissed. That decree forever precludes him from setting up the same equitable claim in another suit, even if that suit had been in a court having jurisdiction of the claim, concurrent with a court of chancery. There is not a more familiar principle to be found in the horn-books of the law, than that a judgment or decree of a court of competent jurisdiction is conclusive upon the parties upon the same matter in litigation in another suit. 1 Stark. Ev. 217; 4 S. & M. 425; 2 Stor. Eq. Jur. § 175; 6 T. R. 471; 1 John. Cas. 492; 9 Wheat. 531; 5 How. Miss. R. 104, 144; 1 Ib. 113.

But I am answered, that in the depositions of Lea and Dally, Moody offered evidence of payment, which was not before the Chancery Court. It will not be pretended, that it was anything more than cumulative evidence of payment by Shields to Farr, cumulative evidence of the same equitable claim that was set up by Moody's bill in chancery, the very question on which the chancery suits turned; and now, here is just the question: will one forum allow the judgments and decrees of another having competent jurisdiction, rendered upon the relative rights of the parties, to be collaterally attacked, by simply offering cumulative evidence of the same matter tried in the other forum? If it will, then the rule just stated and the authorities just cited, mean nothing. If it will, then every suit brought on a judgment or decree is still open to trial on the merits of the original controversy. Defendant has but to find a new witness. Why, even in the original suit, the party could not make such cumulative evidence available, to open the decree or judgment. In this very cause, it was decided by this court, that a court of equity will not open a decree upon evidence merely cumulative. 27 Miss. R. 799; see also 3 P. Wms. 371; 3 John. Ch. R. 125; 16 Ves. 88, 398.

A bill or motion for a new trial at law is governed by the same principle. 8 John. R. 84; 15 Ib. 210.

If the judgment or decree could not be opened by direct proceedings in the same suit and in the same court upon such evidence, upon what principle, I ask, could it be collaterally attacked in another court, and in another suit involving the same matters? Unquestionably it is *res adjudicata*, and binding and conclusive on all courts of concurrent power. See 1 John. Ch. R. 95, 99.

The conclusions are inevitable, that so long as we regard Moody's claim as a mere equitable right, and not a legal title, the evidence offered by Moody was properly rejected by the court. 1st. Because that equitable right could not be set up in ejectment in bar of the legal title. 2d. Because if that equitable right could be set up in bar of the legal title, it was but a claim of right, which had been adjudicated by a court having competent jurisdiction, and decided to be no right, title, claim, or interest; and that judgment was conclusive on the subject.

The only possible escape from either of the foregoing conclusions, is to assume that Moody offered evidence of a legal title, and not of an equitable right. Moody could not sue in chancery, on his claim as a paramount equitable right. Try that right in that court, and when held to be no paramount right, try the same claim in a court of law as a legal title. He elected his forum, got the benefit of its jurisdiction, and is bound by its adjudication.

But, apart from this, I scarcely think that any lawyer will urge that Moody's claim was a legal title, even if it be true that Shields had entirely paid Farr. It is to assume that Shields, who held only a bond for title after paying the purchase-money, held a legal title without a conveyance from Farr. Such a proposition is simply nonsense.

But we are told that such an interest could be sold under execution, and that therefore it must be a legal title. What may be sold under execution, and what constitutes a legal title, are very different questions. An equitable right may be sold under execution, without thereby making that right a legal title. The statutes expressly make equitable rights the subject of sale under execution. They enact that estates of every kind held in trust, shall be subject to the debts of the usee, as they would be if the usee held the title. Hutch. Code, 610, § 29. Do they make every trust estate a legal title in the usee? They enact that when the sheriff shall sell lands under execution, he shall make to the purchaser such a deed, as may be necessary to vest in the purchaser all the right, title, claim, interest, and demand of the defendant, either in law or equity. Hutch. Code, p. 907, § 55.

These statutes very plainly subject a perfect equity to sale under execution, but they are very far from converting that equity into a

legal title. They are very far from saying that such an equity may be enforced in an action of ejectment. These are left untouched by the statutes. In the cases before referred to, the distinction is plainly marked and clearly defined. The first point decided in these cases is, that such an equitable right, is under the statutes aforesaid, subject to sale under execution, and that the purchaser takes a perfect equity, that can be enforced in a court of chancery. 5 S. & M. 506; 13 Ib. 108. But in the same cases, it is held that he does not get a legal title, and therefore he cannot use it in ejectment.

In no possible view of the case was the evidence offered by Moody admissible, and therefore the court did not err in excluding it from the jury.

HANDY, J., delivered the opinion of the court.

The questions presented for consideration in this case arise upon the exclusion of certain evidence offered on the trial below, on the part of the defendant.

First. After the evidence was closed and the case rested on the part of the plaintiff's lessor, the defendant offered in evidence a written agreement signed by Farr, by which, in consideration of the sum of $2800, he agreed to convey to Mizell and Graves the lot in controversy, within twelve months after the date, February 11th, 1854; or thereafter, whenever the parties should require; and in connection therewith offered to prove by a witness, Catlett, declarations made by Farr that he had no interest in the lot, and that he had sold and conveyed it to Mizell and Graves. The plaintiff objected to the introduction of this evidence, and the objection was sustained, the defendant excepting.

The purpose for which the evidence was offered appears to have been to show that Farr had divested himself of the title, and therefore that he could not recover in the action.

We think that the evidence was properly excluded. The contract offered was made pending the action, and was executory in its character, being merely an agreement to convey, which was not shown to have been performed, and which might never have been performed. It could not therefore of itself operate as an entire divestiture of the legal title, so as to defeat this action. And the declarations

made to Catlett having direct reference to this agreement, were in-competent, for the same reason that the agreement itself was incompetent. Apart from the agreement, it was a mere declaration that he had parted with his interest in the lot, which of itself would not be competent to divest his legal title, and which was not binding upon him, and was contradicted by the fact that he was then prosecuting the suit to recover the property.

Second. The defendant also offered in evidence a release of dower, executed by the widow of John Shields to the defendant. Upon objection by the plaintiff this was excluded, and we think properly. It was not shown, or offered to be shown, that the widow's dower in the lot had been assigned; and it might turn out upon an allotment of her dower in her husband's land, that other lands than the lot in controversy would be assigned to her.

Thirdly. The defendant then offered in evidence a transcript of a judgment against John Shields, an execution thereon, and a sheriff's sale and deed, showing a purchase by the defendant; also various matters of evidence in writing, and several depositions and witnesses, for the purpose of showing, that after the written agreement by Farr, for the sale of the lot in controversy to Shields, the purchase-money had been paid in full by Shields, and that in the mean time and before the rescission of the contract of sale by Farr and Shields, the judgment against Shields, under which the defendant claims title, was rendered, and became a lien on the lot as the absolute property of Shields. This evidence was for the most part the same as that introduced in two suits in chancery, in relation to the same lot, formerly pending between the parties to this suit. But additional evidence was also now offered to show admissions by the plaintiff, that the purchase-money had been fully paid to him by Shields, and to prove acts of the plaintiff tending to show the payment of the purchase-money by Shields. This evidence was all admitted in the first instance, but was afterwards ruled out by the court; to which the defendant excepted. And the question now is, was this evidence competent?

It is incontrovertibly true, that the plaintiff cannot recover in ejectment without showing that he has the legal title. And it is settled in this court, that where a party has purchased land, and paid the whole purchase-money, and has taken a bond to convey

the title, but no deed of conveyance has been executed, he has a mere equitable title, and must go into equity to divest his vendor's legal title, and until a conveyance of that title be made, that he has not the legal title, and cannot recover in ejectment. *Thompson* v. *Wheatley*, 5 S. & M. 506; *Wolfe* v. *Dowell*, 13 S. & M. 106. Is there any difference in principle between the position of a party holding such equitable title and defending upon it against the action at law of the party holding the legal title, and that of a party claiming as plaintiff under such title? It appears not. For in ejectment the legal title alone is the subject of controversy; and there can be no sound legal reason why this rule should not operate equally, upon the rights of the defendant and of the plaintiff. It will not do to say that the defendant's possession gives him a higher right; because that possession is merely under an equitable claim, which cannot properly be considered in the action of ejectment. Nor will it do to say that his possession, supported by evidence of a just and equitable right, with nothing but the naked legal title outstanding in the plaintiff, should entitle him to defend against the legal title; because that would transfer from a court of equity to a court of law the cognizance of a question of legal title, and make the action of ejectment depend upon a question of equitable title, which, for very obvious reasons, is not admissible.

We therefore think that the evidence here offered was properly ruled out, and that the judgment is correct, and must be affirmed.

This cause, upon the first argument in this court, at the October Term, A.D. 1856, was reversed, and ordered to be remanded for a new trial. On the application of the appellee, a reargument was granted, and at this term was again argued, and the judgment below affirmed.