## WALTER L. OTEY *v.* MORGAN McAFEE's Adm'r.

1. EVIDENCE: WITNESS: COMPETENCY OF PARTIES.—A party cannot be a witness to discharge himself from a claim set up against him in behalf of a deceased person, to an amount exceeding fifty dollars.

2. NEW TRIAL: GRANTED WHEN VERDICT NOT SUSTAINED BY EVIDENCE..—A new trial will be granted where the verdict, considered with reference to the issues submitted to the jury, is not sustained by the evidence.

ERROR to the Circuit Court of Warren county. Hon. Jacob S. Yerger, judge.

In May, 1856, Morgan McAfee sued out an attachment against plaintiff in error, for $1600, with interest from 1st Jan. 1849, for so much money had and received by the defendant below for his use, and for so much laid out, and paid, and expended by plaintiff for defendant. The defendant below appeared, and pleaded the general issue, the Statute of Limitations, and payment. In December, 1859, the death of McAfee was suggested, and the cause was revived in the name of Haynes, his administrator. At the June term, 1859, plaintiff filed his bill of particulars, as follows:

"W. L. OTEY                              To MORGAN McAFEE, Dr.
1850, Jan. 26th, To this amount of money had and received for use
                    of plaintiff, . . . . . . . .   $1600 00
     "          To this amount for money advanced,  . . .   1600 00
     "          To value of two negroes, received by you, and sold,
                    being the property of plaintiff, and not credited or
                    accounted for, . . . . . . .    1600 00
     "          To amount collected from Ira McKinney's estate,
                    on his draft for . . . . . . .  1166 00
                    And interest thereon, dated April 14th, 1848,
                    on Ricks, Carroll & Co., and indorsed by
                    John C. Moore."

During the trial, plaintiff was permitted to amend his complaint, so as to embrace a demand for a judgment for two negroes, worth $1600, "received by defendant of plaintiff, the value of which defendant owes to plaintiff."

On the trial, plaintiff's evidence showed that, in 1848, the defendant came from North Carolina to this State, with a lot of negroes for sale; and that a man by the name of Moore came with him; that Moore was a stranger to plaintiff, and that the defendant was well known to him, and had a large debt against plaintiff. That soon afterwards, said Moore was seen in possession of two negroes belonging to McAfee, and offering them for sale. That soon after this, plaintiff and his brother and defendant met in New Orleans, and there defendant accounted to plaintiff for a third negro, which had been in Moore's possession for sale. That defendant informed

plaintiff that Moore had, a short time previously, left New Orleans for North Carolina, leaving with defendant, for plaintiff, a draft drawn by Ira McKinney on Ricks, Carroll & Co., for $1166; that Moore said he had sold plaintiff's negroes, with others belonging to defendant, to said McKinney; and that this draft of McKinney's was for the balance not paid for in the trade, and that this draft was for the price of plaintiff's two negroes, which were sold on a credit, and also for a small balance due on the sales of defendant's negroes. Plaintiff insisted, that defendant should take this draft, and credit him for the amount on his indebtedness, alleging that Moore had no authority to sell on credit, but only for cash. This the defendant refused to do. Thereupon plaintiff said he knew of some parties in Tallahatchie county, Miss., who had bought slaves from Moore on a credit, and still owed him; and that, if defendant would not credit him with the draft, he would garnishee the said debtors of Moore. Defendant then said, that Moore was his neighbor in North Carolina, and if the plaintiff would not take out a garnishment, he would take the draft, and collect it, and credit McAfee with the proceeds. To which plaintiff assented.

There was no statement made then by McAfee, that there was a limit as to the price of the negroes; nor did he complain that they were sold for less than their value. The two negroes placed in possession of Moore, were worth $1500 or $1600. A short time after this interview, McAfee gave his note to Otey for over $5000.

Plaintiff showed by a record from Louisiana, that on the 30th January, 1851, Otey sued out an attachment in that State against McKinney, to collect this draft; and that he swore that McKinney was justly indebted to him in that amount; and that on the 8th April, 1854, Otey had withdrawn the draft from the files of the court in which the attachment was pending.

Defendant proved by Moore, that he, as agent for McAfee, had sold plaintiff's two negroes to Ira McKinney, for $1041; he also sold one of Otey's negroes to McKinney, and received some money on that negro, and took the draft from McKinney for the price of plaintiff's negroes and the balance due on Otey's negro.

Defendant proved by a witness, that he (the witness) was present at the interview between plaintiff and defendant, in New Orleans, referred to in plaintiff's testimony; and that the result of that inter-

view was, that McAfee requested Otey to keep the draft until it was due, and if not paid, to attach McKinney's cotton, and when collected to give McAfee credit for the proceeds. It was also proven, that in September, 1854, McAfee indorsed the McKinney draft to a lawyer, for suit in the Federal Court, in the name of Otey, stating in his letter that he had an order from Otey for the proceeds. when collected. That suit was accordingly brought, and the money collected by the attorney, on the 4th June, 1856, but not paid over by him to any one.

Defendant read a record from the Fourth District Court of New Orleans, La., showing a recovery by him against McAfee, in the year 1851, on the note, for over $5000, referred to in plaintiff's testimony, and also on another small note. · He also read a record from the Circuit Court of the United States for the Southern District of this State, showing a recovery in that court in the year 1852, upon the said record from Louisiana. He also read a record from said Circuit Court of the United States, showing that, on the 22d March, 1854, McAfee filed his bill in that court, under oath, seeking to enjoin the collection of a portion of said judgment, upon the ground, "that since its rendition, he had discovered that Otey had collected for and on his account the sum of $1600 principal, and about $300 interest." On the 15th January, 1855, this injunction was dissolved; and on the 20th of the same month, McAfee filed. an amended bill, stating that Otey's indebtedness to him arose out of a sale of four negroes, delivered by him to Otey; that Otey had accounted for the sale of two only, and of the other two he had returned no account; that they were worth $1600, and he had expressly limited the sale of. them at that price in cash; that Otey told him they had been sold in a lot with other negroes to Ira McKinney, who only paid for them in part, giving his draft for a balance of $1166. That on a former settlement with Otey, when he gave him the note, which was the foundation of said judgment, he insisted that Otey should credit him with the proceeds of the sale of said negroes; but Otey said they had been sold by his agent against his orders on credit, and he had not then realized the money, but he had ample securities, belonging to his agent, then· in his hands, and he would collect and appropriate them to his benefit, which he has failed to do.

To this amended bill, Otey demurred, and McAfee dismissed his suit.

Defendant's counsel then introduced the defendant himself, and proposed to examine him in reference to the validity of the claim sued on; but on objection by plaintiff, he was ruled to be incompetent,—the plaintiff having died before the trial,—and defendant excepted. Defendant proved that plaintiff had collected, as his agent, from one E. Waites, the sum of $687 50.

The plaintiff had a verdict and judgment for $1297 34, which was for the value of the two negroes, estimated at $1600, and interest,—less the set-off proved.

The defendant's motion for a new trial was overruled, and he excepted, and sued out this writ of error.

*Marshall* and *Miller*, for plaintiff in error.

*D. Shelton*, for defendant in error.

HARRIS, J., delivered the opinion of the court.

The defendant in error brought his action of *assumpsit*, in the Circuit Court of Warren county, to recover the sum of sixteen hundred dollars, for so much money had and received by plaintiff in error, for his use, and for so much money paid, laid out, and expended.

To this complaint, the plaintiff in error filed his answer, relying on the Statute of Limitations, former recovery, and a general denial. On all of which there was issue taken.

More than three years after the original complaint was filed, an amended declaration was filed, as admitted in argument, termed in this record an amendment of the *writ*. Also, a bill of particulars, specifying that the sum demanded is for the price of two negro slaves, received by plaintiff in error, worth $1600, and alleged, in the bill of particulars, to have been sold by plaintiff in error. Upon these issues, a jury and verdict for defendant in error, bills of exception, and motion for a new trial, refusal of motion, and exception thereto, with all the evidence in the cause, appear on the record.

The defendant in error died pending the suit, and there was a revivor against his representative.

The first error assigned, is that the court excluded the testimony of the plaintiff in error on the trial,—offered to discharge himself from liability to the estate of the decedent, plaintiff below.

In this there was no error, according to the construction placed upon our late act, on this subject, by several decisions of this court.

It is next urged that the court erred in giving instructions asked by the defendant in error.

It will not be necessary to consider the instruction objected to, in the view we take of this case; more especially as the objection is one which goes rather to the accuracy of the language employed in the instruction, than to the real intent; and this uncertainty will doubtless be corrected on another trial.

The last assignment of error relates to the refusal of the court to grant the motion for a new trial.

With a full recognition of the stringent rules heretofore adopted, and uniformly enforced, in relation to the disturbance of the action of the court and jury below, upon questions of fact, we are nevertheless constrained to say, that this verdict is *manifestly* wrong, upon a thorough and careful review of the evidence, as presented in this record.

Indeed we are unable to perceive in the record, that it has the shadow of support, unless the statements of the plaintiff below, made in his amended bill, filed in the United States District Court for the Southern District of Mississippi (which was afterwards, on demurrer pending, dismissed by himself), are to override the direct testimony of all the witnesses, the statements, acts, and conduct of the defendant in error himself, as well as all the circumstances in proof.   And even then, the verdict in this case, upon the issues here presented, could not be sustained, because the statements of that amended bill would establish a subsisting special agreement between these parties, not sued on in this action, wholly at war with his original and amended complaint, and decisive against him in this case.

We forbear from further comment on the evidence, as the case will be remanded for a new trial in the court below, where addi-

tional or explanatory evidence may be introduced to obviate the difficulties presented in this record.

Let the judgment be reversed, cause remanded, and a *venire de novo* awarded.