## LEONORA M. LOCKHART et. al. v. WM. A. CAMFIELD.

1. LEGAL TITLE AND SUPERIOR EQUITY UNDER THE STATUTE—LANDLORD AND TENANT—CASE AT BAR.—S. F. K., J. B. K. and L. M. L. were the heirs to and cotenants in common, by undoubted title, of equal undivided interests, in a tract of land in Mississippi; and, the two first named, in 1865, executed a bond to L., husband of said L. M. L., binding themselves to convey to him their respective interests in the premises, upon payment by him to them of $866 each, secured by his promissory notes, the object being to enable him to sell the whole tract to C. in exchange for lands in Alabama, which said L. and C. at the same time accordingly contracted should be done by the proper conveyances, and the latter was thereupon, and in consideration thereof, put into possession of the premises in Mississippi. Subsequently, the heirs and late cotenants agreed to rescind their contract, and .thereupon, the title, bonds and notes were surrendered. C. tendered conveyance of the Alabama lands according to his contract, which was refused, and the heirs and late co-tenants brought ejectment against C. to

recover back the Mississippi lands. C. set up the agreement as constituting in him an equitable title superior to their legal title. *Held*, that C.'s equitable title, under the circumstances, constituted no defense ; and *held* further, that, as between the late co-tenants and C., the relation of landlord and tenant, in respect to the premises, did not exist, C. having entered as a purchaser.

2. EVIDENCE—NOTICE TO PRODUCE PAPERS—PRACTICE.—In a notice to produce papers at the trial, a title bond was improperly described as a " deed," but the party took no exception and produced the bond. At a second trial, exceptions were taken to the misnomer of the instrument in the notice, and for that reason the bond was not produced. Whereupon, the court admitted secondary evidence of the contents of the bond. *Held*, on exceptions, that the production of the paper on the former occasion, under the notice, was a waiver of the misnomer and an acquiesence in the meaning intended by the notice.

3. SAME—WEIGHT OF EVIDENCE—JURY—INSTRUCTIONS.—A certificate of acknowledgment by a justice of the peace is *prima facie* true ; but, whether it be overcome by other evidence or not, is a question for a jury. And an instruction by the court that such certificate is entitled to equal credit with a disinterested witness, is an instruction upon the weight of evidence, tends to mislead the jury, and is therefore erroneous.

4. SAME—INTERESTED WITNESSES.—The statutory rule (Code of 1857, p. 510) that " the jury shall give such weight to the testimony of parties and interested witnesses as, in view of their situation and of all the circumstances, they shall be fairly entitled to," is so just and reasonable that, although not brought forward in the Code of 1871, the rule must, in the nature of things, still prevail.

ERROR to the circuit court of Lee county. BOONE, J.

The facts of the case are all apparent in the argument of counsel and opinion of the court.

*A. H. Handy*, for plaintiffs in error.

This case presents three classes of execeptions :

1. The special exceptions taken to the rulings of the court on the trial.

2. The errors committed by the court in granting certain instructions for defendant.

3. The grounds on which the motion for a new trial was made ; that the verdict was contrary to law and the evidence.

These will be considered in this order:

I. 1. Evidence of the contents of the bond of Susan King and J. B. King to Lockhart was improperly admitted, because the notice to produce the original required the production of a deed, which was insufficient to allow the introduction of secondary evidence of a

bond.　A party is entitled to notice of what particular paper he is required to produce. 1 Stark. Ev. (8th Am. ed.) 559 (marg.), and note *r*, and cases there cited.

2. The copy of the title bond of George W. Lockhart and wife to defendant, for the lands in controversy, was improperly admitted. This was objected to by plaintiffs on several grounds, one of which is clear against its admissibility, to wit, because it was not acknowledged by George W. Lockhart, the husband.

It was a copy made from the records of the circuit court. It purported to be a contract for the sale of the wife's separate property, and, in order to be entitled to record, and to have the effect and character of a record, as a bond, it was necessary to be acknowledged by both husband and wife (Rev. Code of 1857, p. 310, art. 24), in the same manner as deeds. And a deed for the real estate of the wife must be acknowledged by the husband and wife. Ib. p. 307, art. 4; ib. p. 309, art 319; ib. p. 336, art. 23; Ezell v. Parker, 41 Miss. 527. The bond was, therefore, not properly acknowledged to admit it to record. Its registration, according to well settled doctrine, amounts to nothing, and the copy of it was not admissible in evidence. Budd v. Brooke, 3 Gill (Md.), 1229, 230.

3. The testimony of defendant, Camfield, was incompetent, and the plaintiffs' exception to its admission is well taken. It was offered mainly to show divestiture of Mrs. Lockhart's title, which pretense rested mainly on the title bond above mentioned, which is above shown to be insufficient to convey her title or to affect her interest. Without the aid of the title bond there can be no pretense of legal title divested from Mrs. Lockhart and vested in Camfield; and if that bond was invalid, the legal title remained in Mrs. Lockhart, and all the testimony of Camfield tending to show his title, predicated of that bond, was incompetent.

The deed which he stated he tendered to George W.

Lockhart is not produced, nor defendant's bond for its execution, so as to show that it was regular and valid. No time of the tender is shown, nor does it appear that Lockhart and wife ever went into possession of the land. This testimony of Camfield was, therefore, incompetent, and should have been ruled out.

II. 1. The first instruction for the defendant was error.

It instructed the jury in substance, that the plaintiffs were not entitled to recover unless they gave the defendant notice in writing to quit, and for the time required by law. Such is the rule as between landlord and tenant, but not where there is a contract for purchase between the parties. This instruction controlled the case and cut off all the merits of the plaintiffs' action, as there was no proof of notice nor any necessity for notice in the case. 27 Miss. 664.

2. The third instruction for defendant was clearly upon the weight of evidence, and upon a matter resting solely with the jury.

Whether the certificate of a sworn officer, as to an official act of his, is entitled to as much credit before the jury as the testimony of a disinterested witness, depends upon the credit which, under the circumstances proved, the jury may give to the officer's act. Southern Express Co. v. Wolfe, 41 Miss. 80, 81. It stands upon its own merits, to be judged of by the jury alone, without direction by the court as to its comparative weight.

Here the certificate of the officer was a mere ceremony required by law in order to render the bond valid and to admit it to registry. Upon the material point of the private examination of Mrs. Lockhart, apart from her husband, it was shown by two witnesses, as well as by the defendant's virtual admission, to be untrue. To say that, under such circumstances, his certificate is entitled to equal credit with the testimony of a dis-

interested witness, is a plain charge as to the weight of testimony; and such was manifestly the effect of this instruction.

But the true rule is, that although the officer cannot be permitted to falsify his own certificate (35 Miss. 105), other witnesses may prove it false and invalidate it; and what degree of credit is due to the certificate is a matter exclusively for the jury in comparison with the testimony of the other witnesses.

III. The verdict was contrary to law and the evidence, and the court erred in overruling the motion to set it aside.

1. The action being ejectment, and the legal title of the plaintiffs being fully established, the defense set up is, at best, but an equitable title; and such an equity cannot be set up as a defense against the legal title in an action of ejectment.

2. The claim of Camfield was founded on his alleged equitable right, derived from the title bond of Geo. W. Lockhart and wife, to him, for the interest of Mrs. Leonora W. Lockhart in the lands sued for; and, as to the interest of Susan F. King and James B. King, in said lands, defendant's claim rested on a bond for title made by said Susan and James B. King to Lockhart; in virtue of which Lockhart and wife executed another bond to convey title to Camfield for the same, as well as for Mrs. Lockhart's interest.

As to the bond to convey Mrs. Leonora Lockhart's interest, the defendant's title was without just foundation either at law or in equity, because:

1. It was a bond to convey her separate property, and was not binding on her or valid to convey her interest, since it was not the joint bond of herself and her husband and acknowledged by them. Rev. Code, 1857, p. 336, art. 23; ib. 307, art. 4; ib. 310, art. 24.

2. It was not acknowledged by the wife separate and apart from her husband, as is clearly shown by the

testimony of Mrs. Lockhart and of Edward Lockhart, and is virtually admitted by the testimony of Camfield himself.   Such private examination of the wife, separate and apart from her husband, is indispensable to the valid acknowledgment of a deed for land.   Love v. Taylor, 26 Miss. 576.   And so of a bond to convey her land.   Rev. Code, 1857, p. 310, art. 24.

As to the interest of Susan and James B. King, the defendant's title rested on a title bond made by them to Geo. W. Lockhart and wife, who, after its execution, gave a bond to Camfield to convey said interest to Camfield.   Neither of these last mentioned bonds was produced and read in evidence on the trial, but they are testified to by defendant's witness, Dozier, who states that they were on condition that Geo. W. Lockhart was afterwards to pay the Kings each $866.66, and thereupon the Kings were to convey their interests to said Lockhart.

But it is proved by the testimony of Susan F. Lockhart (formerly King) that this transaction was afterwards rescinded between herself and brother and Geo. W. Lockhart, by their surrendering to Lockhart his notes, and Lockhart giving to them their title bond.

This rescission of the contract it was perfectly competent for the obligors to make; for, though it is true that it was the object of the Kings, in making the bond, to enable Lockhart to sell the whole land to Camfield, yet the bonds were on the express condition that Lockhart should pay them the amount of the notes he gave them; and when he failed to do so, they had a perfect right to rescind the contract between themselves and Lockhart, and to be restored to their rights in the land.

But, during all this time, Camfield was not prejudiced; he had paid no money for the land he desired to purchase; he had not conveyed the land in Alabama to Lockhart, but still owned it; and when Lockhart

declined to receive a deed for it, and the contract was rescinded between him and the Kings, the whole matter was at an end; Camfield had his Alabama lands, and had enjoyed the use of the lands in controversy for a considerable time.

As to the interests of the Kings, the most favorable view that can possibly be taken as to Camfield's claim is, that since they entered into the transaction between Lockhart and Camfield, to enable Lockhart to sell the entire lands to Camfield, they were not justified in rescinding the contract between themselves and Lockhart, so as to prevent Lockhart in conveying the lands to Camfield. But this is, at best, but a doubtful equity in favor of Camfield, and cannot have further effect than to compel the Kings to carry out the contract for the benefit of Camfield. But this is at best purely a matter of equity, and, in a proper proceeding in equity to that end, surely the Kings would not be compelled to convey their interests in the land without payment by Camfield, if he sought to hold them to their contract; for that contract was that they should not convey until the money due them should be paid.

But this is a matter of pure equity cognizance, if it has any proper foundation whatever. It affords no ground whatever of a defense to an action of ejectment by the parties holding the legal title.

Thus, the invalidity of the bond to convey Mrs. Leonora Lockhart's interest, left her legal title intact, and the rescission of the contract between the Kings and Lockhart left the legal title of the Kings in the same condition. And if there be any claim whatever to the land, in behalf of Camfield—which we by no means admit—it is equitable in its nature and cannot be set up as a defense against the plaintiff's legal title as " superior to the plaintiffs' legal title."

It is clear that the defendant has not shown such an equitable title as would bar the plaintiffs' right of

recovery under art. 17, p. 388, Code 1857 ; that is, a " superior .equitable title." But that act is repealed by Code of 1871. See Rice v. Wright, decided at April term, 1872.

All the plaintiffs clearly hold the legal title as to their several and respective interests in the lands, and that must prevail in this action.

*Houston & Reynolds*, for defendant in error.

Action of ejectment by plaintiffs in error against defendant in error. Plaintiffs claim title as the grand-children and sole heirs at law of Jno. D. Brame, in whom is shown a regular chain of title from the government, and the defendant claims title from the plaintiffs. In 1865, Susan Francis King, then an adult single woman, and James B. King executed their title bond, conditioned to make a title to George W. Lockhart upon the payment of the sum of $866.66 ; that this sale was made to enable George W. Lockhart to sell and convey the lands to Mrs. S. Camfield, defendant. Also a bond for title signed by George W. Lockhart and Leonora M. Lockhart, conditioned to make title to the lands in controversy to Mrs. A. Camfield, upon his executing a good and perfect title to the eight hundred acres of land in Choctaw county, Alabama, and for which Camfield had executed his bond for title. That before the institution of the suit, Camfield offered to deliver to George W. Lockhart, for himself and Leonora M. Lockhart, a deed to the lands set forth in the title bond.

The title bond of George W. and Leonora M. Lockhart is acknowledged by the wife alone, and in the manner required by law.

That the execution of the title bond by James B. King and Susan Francis King to George W. Lockhart, and by George W. Lockhart and Leonora M. Lockhart to Mrs. A. Camfield, " were done at the same time,

and contained the terms of one and an entire agreement between all the parties, and that to convey to George W. and Leonora M. Lockhart the eight hundred acres in Alabama was the entire consideration on his part," etc.   *   *   *

I. The first error complained of is, that the court below improperly admitted secondary evidence of the contents of the title bond, the notice to produce describing a deed, and not a title bond.

Plaintiffs admitted notice to produce deed, and that on a former trial they had, in answer to the same notice, produced a title bond in relation to said lands between the parties, but they declined now to produce it.

As a general rule, a notice to produce a written instrument must describe it accurately, so as to give the party notice of what is required to be produced. But where it is manifest from all the circumstances that the party understood what paper he was required to produce, the rule is different.   Bogart v. Brown, 5 Pick. 18 ; Osgood v. Hutchins, 6 N. H. 381.

The title bond was in the possession of the parties at the time of the trial; it was shown to be there on the former trial, and the presumption is that it so continued until the contrary was shown.   " Notice during the progress of a trial is sufficient, where it appears the written instrument was in possession of the party at the time."   Atwell v. Miller, 6 Mich. 10; Stark. Ev. (9th ed.) 515 (564), note 1.

II. The court erred in admitting the title bond as testimony, because said title bond is a copy from the records of the probate court, and was not acknowledged at the time of the record of said bond.

The objection is untenable because it was not a copy which was offered in evidence, but the original, as this record here shows.

The title bond was signed by the husband, and signed and legally acknowledged by the wife.

The husband must join the wife in a conveyance of her separate property, and the wife must acknowledge the conveyance in the manner directed by law for the conveyance of real estate by married women. Code of 1857, p. 335, art. 23.

But the general objection, " that the title bond was incompetent," is " specific enough to present distinctly to the court the precise point relied on by the objector." The principle is well settled that objections to testimony must be specific. N. O., J. & G. N. Railroad Co. v. Moye, 39 Miss. 385.

The title bond was admissible in evidence for the following reasons:

1. It was a conveyance of a perfect equitable title to defendant.

2. If the title bond was defective because it did not conform to the directions of law as to conveyances by married women, still it was properly admitted in evidence as a link in defendant's chain of title. If Mrs. Lockhart received the purchase money for the land, or that which was agreed to be given in exchange for it, and gave defendant her bond for title, which she failed to acknowledge, she is estopped in law and in equity from setting up an adverse claim, as we shall further show in a subsequent portion of our argument. .

III. The next error complained of is the admission of the testimony of Camfield.

The objection, as it appears in the transcript, is, "to the testimony of Camfield, plaintiffs excepted at the time." It does not appear that an objection was made to the testimony of Camfield, but that plaintiffs excepted to it. Excepted for what reason? It is usual to object to the admissibility of testimony, and, if the objection be overruled, to except to the decision. It does not appear from the transcript whether the court

sustained or overruled the "exception." But whether
it be an "exception" or "objection" to testimony, it
should have been—though it does not appear it was—
overruled, because it was not specific. 39 Miss. 385.

IV. It is argued that the circuit court erred in
giving the first and third instructions asked by de-
fendants below.

These instructions appear as a part of the bill of ex-
ceptions, and not as a part of the record. By statute,
Code of 1857, p. 504, art. 161, instructions, marked as
given or as refused, are made a part of the record. If
a part of the record, they cannot be certified to this
court by bill of exceptions. 44 Miss. 606.

The first charge is in reference to notice to quit,
and, we submit without argument, states the law cor-
rectly. But counsel for plaintiff in error contend that
the charge was not applicable, because the relation of
vendor and vendee existed between the parties, and
not that of landlord and tenant. In another portion
of his argument he contends that the bond for title,
whence sprang the relation of vendor and vendee, was
void as to Mrs. Lockhart. If void as to her, she was
not a vendor and defendant not a vendee. It was as
if no contract had been made between them. The
defendant was in possession of the land by her consent,
and so continued, and in this view taken by counsel for
plaintiff in error, there sprang up the relation of land-
lord and tenant, and notice to quit was necessary.
The general rule is, where the lease is for a certain
term, notice to quit is not necessary; where the term
is uncertain, notice is necessary. In the case supposed,
defendant became a tenant at will. 1 Washb. Real
Prop. 371, 505; ib. (377), 512, (378), 515; McKissack v.
Bullington, 37 Miss. 537.

But, if the court should conclude, and as we think
they should, that there was a valid contract of sale,
then the charge was abstract and irrelevant, and, taken

in connection with the third charge, the jury could not have been misled by it.

It is objected this instruction was upon the weight of testimony. The charge is, that " the certificate of a sworn officer is entitled to equal credit with the statements of a disinterested witness."

What credit is due to the statements of a disinterested witness? Just such credit as the jury in their judgment choose to give to it. The instruction is in effect, that the certificate of a sworn officer is entitled to just such credit as the jury choose to give it.

In this view, and taken in connection with the second charge, the instruction was not upon the weight of evidence, and could not possibly have misled the jury.

V. Lastly, as to the merits of the controversy. The verdict of the jury was right.

It is admitted that Brame, the grandfather of plaintiffs, had the title.

Two of the plaintiffs, Susan Francis King (now Lockhart, but not Leonora), then an adult, *feme sole*, and James B. King convey the land in controversy by title bond to George W. Lockhart, the said Susan Francis and James B. King being each the owner of a one-third interest.

The title bond vested in George W. Lockhart a perfect acquitable title to the land in controversy.

But it is insisted that this contract of sale was rescinded by the parties as to the effect of this rescission.

The title bond was executed in 1865; the rescission took place some time afterwards, defendant not present. Susan F. Lockhart testifies: " She and brother did sell the land to George W. Lockhart to enable him to sell to defendant, Camfield, and at the same time and place that he sold to defendant."

That the title bonds to George W. Lockhart and George W. and Leonora M. Lockhart to Camfield were done at the same time, and contained the terms of one

and an entire agreement between all the parties, and the conveyance of the land in Alabama was the entire consideration.

That George W. Lockhart and the Kings (brother and sister) had the right to rescind their contract, made, as one of them testifies, to enable Lockhart to sell to Camfield, so as to prejudice the title of Camfield, is shocking to every sense of justice and contrary to the well settled principles of the law. The rule is, that contracts cannot be rescinded by the parties thereto so as to prejudice or affect the rights of third persons. Johnston v. Mitchell, 1 Marsh. (Ky.) 227; Henderson v. Pickett, 4 Mon. 56; Collier v. Thompson, 4 ib. 85; Durrett v. Simpson, 3 ib. 523; Attorney General v. Purmount, 5 Paige Ch. 620.

George W. Lockhart, by virtue of the title bond of Susan Francis King and James B. King, acquired a perfect equitable title to a two-third interest in the lands, and their subsequent agreement to rescind the contract could not prejudice Camfield's rights.

George W. Lockhart and Leonora M. Lockhart execute their title bond to the land to Camfield at the same time with the execution of the other title bonds. This title bond, if binding on Leonora, the wife, vested in Camfield an equitable title to the land which was superior to the legal title of plaintiffs, and the plaintiffs were not entitled to recover. Code, 1857, 388, art. 17.

It is not pretended that the bond is not binding on George W. Lockhart, the husband. Before the institution of this suit, Camfield had tendered to George W. Lockhart, for himself and Leonora Lockhart, a deed to the lands in Alabama, which he had agreed to give in exchange for the lands in controversy. He said the deed was all right, but that he, Lockhart, was not ready to perform on his part. This bond conveyed to Camfield the two-thirds interest which George W. Lockhart had acquired by the title bond of Susan Francis and James

B. King, and as to this it cannot be pretended that plaintiffs have the right to recover.

Now, was the bond for title binding on Leonora M. Lockhart, the wife, so as to convey the other one-third interest? We insist that it was.

The bond was signed by her and her husband jointly and acknowledged by her alone. This was a compliance with the directions of the statute.

But it is insisted that the bond was not acknowledged separate and apart from the husband. This was a question of fact, and the jury were instructed that if they believed it was not acknowledged separate and apart from her husband, they would find for the plaintiff. The jury returned a verdict for the defendants, and their verdict, on a question of fact, will not be disturbed unless manifestly against the weight of evidence.

But if the bond was never acknowledged, still it is binding on Mrs. Lockhart; for, having received the consideration, she is estopped from denying the validity of the title bond. Lee v. Gardner, 26 Miss. 54; Kemp v. Pintard, 32 ib. 324.

SIMRALL, J. :

It is conceded that the legal title to the lands and tenements sued for was in the plaintiffs, as the heirs at law of their deceased grandfather, Brame. Although several questions arose during the progress of the trial, which it may be proper to consider, the main defense relied upon was, that the defendant " had a title, which in equity would be regarded as superior to the legal title of the plaintiffs " (Code 1857, 388, art. 17), and sufficient to defeat a recovery. What is a " superior equitable title " within the intendment and reason of the statute?

There has been much discussion in our books as to the nature of trust estates. In considering what trust

estates could be sold under execution (How. & Hutch. 349, § 29; Thompson v. Wheatly, 5 S. & M. 506), it was held, that a purchaser, with a title bond, if he had paid all the purchase money, had such estate as could be levied on and sold.   In Wolf v. Dowell, 13 S. & M. 108–'9; Wheatly v. Thompson, 5 ib. 506; Goodwin v. Anderson, ib. 730; Dollahite v. Orne, 2 ib. 592; Brown v. Bartee, 10 ib. 268, the principle is affirmed that a purchaser at sheriff's sale of the equity of redemption, although the entire mortgage debt has been paid off (if satisfaction has not been entered on the record of the mortgage as required by statute), acquires an equitable title, and must go into a court of equity to divest the legal title, because he cannot recover in ejectment. The rule is the same if the incumbrance is a deed in trust.   They further declare, that the judgment debtor must hold the full and complete equitable legal title, and therefore the judgment creditor cannot sell under execution until complete payment of the incumbrance; nothing must be outstanding against him, except the dry legal title in the mortgagee or trustee.   In Moody v. Farr's Lessee, 33 Miss. 210, the court affirm the doctrine that in ejectment the legal title alone is involved, and that a defendant cannot defeat the plaintiff by showing an equitable title in himself; the defendant must carry his equitable title to a court of chancery, where alone he can have the benefit of it.   This judgment, however, does not in terms overturn the case of Brown v. Weast, 7 How. 184, holding that the mere "formal right" of a trustee shall not be set up against the *cestui que trust*, where the trust has been fully satisfied.

In Heard v. Baird, 40 Miss. 796, 789, the cases are carefully reviewed and the conclusion reached, that the principle laid down in Brown v. Weast, 7 How. 184, which was, "that a person holding the naked legal title, the trust being satisfied, could not assert that title in an action of ejectment to recover the land from

the *cestui que trust*, having the entire beneficial interest," was incorporated in the Code of 1857, 388, art. 17, above quoted. If the "superior equitable title," referred to in the Code, be of the complete character as that under consideration in Brown v. Weast, much of the difficulty which surrounds this case is removed out of the way. The authorities to which reference has been made, succeeding the case of Brown v. Weast, held with uniformity and consistency to the doctrine that the plaintiff in ejectment must recover upon his legal title; and equitable title, however perfect and complete, would not avail in that action. So emphatic and distinct had been these enunciations, culminating in the case reported in 33 Miss. (already referred to), holding that the equitable title would no more prevail to defeat a recovery than it would suffice to recover upon, that the case of Brown v. Weast, 7 How. was greatly shaken, if not entirely overturned. The statute of 1857 may have been passed to give a certain rule to the extent stated in this early case, that the equitable title must be complete, nothing standing out against it except the dry legal title. The entire beneficial interest must be with the equitable owner.

Let us now examine the equitable right presented by the defendant, to protect his possession against the legal title of the plaintiffs.

In 1865, Susan F. King and James B. King, owning an undivided two-thirds of the premises, executed a bond to George W. Lockhart, the husband of their co-heir and sister, Leonora, obligating themselves to convey to him their interests in the land, upon payment by him of $866.66 to each of them, secured by his promissory notes. As shown upon the trial, the object of this purchase was that George W. Lockhart might sell the property to the defendant, Camfield, in exchange for a tract of land in Alabama. At the same

time, Lockhart and Camfield entered into a contract, by which Lockhart was to convey to Camfield the land sued for, and Camfield was to convey to him the land in Alabama. Camfield went at once into possession. The contract or title bond was signed at its date by Mrs. Lockhart, and was, or purported to be, acknowledged by her in 1870, after this suit was brought. There was testimony to the jury, that the contract of sale by Susan F. and James B. King to George W. Lockhart had been rescinded, their title bonds surrendered, and the notes also. When this was done was not distinctly shown, but that it was before this suit was brought, may be inferred. Camfield had tendered to Lockhart a deed, which he declined to accept.

The equity of the defendant arises out of the bond of Lockhart and wife, when Camfield tendered a deed to Lockhart for the land in Alabama. It is manifest that the latter could not convey a legal title to Camfield to the land in suit. Mrs. Lockhart, as co-heir with her brother and sister, owned an undivided third. The equitable interest which Lockhart acquired from Susan F. and James B. King had been surrendered by an annulment of that contract. But it was argued for the defendant that, under the circumstances, and with the knowledge that Lockhart was purchasing for the purpose of sale to Camfield, they could not, as against him, by arrangement with Lockhart, vacate that contract, he having acquired by his contract with Lockhart an equitable assignment of his rights against them in such wise as that Lockhart could not release them from their contract; and that if so, then Camfield is substituted by his contract with Lockhart to all the rights which he had against Susan F. and Jas. B. King. The extent of that right was to pay to each of them the consideration money which Lockhart had agreed to pay, and compel a conveyance of their title to himself. Lockhart could not demand a deed until

payment of the money. By no sort of arrangement or contract with Camfield could he put it in Camfield's power to acquire their title, except upon a fulfillment of his engagement to them. If Camfield had moved in a court of equity for a specific performance of Lockhart's contract, it would not be insisted that James B. and Susan F. King could be required to give up their legal title until the consideration had been paid to them.

Lockhart incurred the obligation to Camfield to make to him a good legal title. He cannot perform that stipulation until he gets in the title of these two heirs, or procures it to be conveyed to Camfield. Neither of them can accomplish that until the money, the stipulated price of the land, is paid. It is not pretended that Lockhart ever tendered, or that Camfield ever offered, to pay to these heirs the consideration for their title. Yet, they were plaintiffs, and as against them Camfield sets up that he has an equity superior to their legal title. Their title is not dry and naked, standing out against a full and complete equity. No benefit or consideration has yet inured to them as reason and motive why they should convey to Camfield. They are still the beneficial owners of the property, and will continue to be so until the price shall have been paid to them.

As to two of the plaintiffs, quite surely the defendant has not such an equity as ought to prevail; and that, too, conceding (as is true) that they and Lockhart could not rescind their contract after the former had executed a title bond to the defendant.

Did the defendant acquire an equity against Mrs. Leonora Lockhart? There is something peculiar and out of the usual course of things in reference to her execution of the title bond to the defendant. The bond was signed and sealed by her husband and herself, in 1865, and in that form, on the 14th October, A. D. 1867,

was filed for record and recorded. Title bonds or other written contracts in relation to lands may be recorded, if proved or acknowledged, like deeds, etc. Code, p. 310, art. 24. Deeds cannot be admitted to record unless duly acknowledged or proved by a subscribing witness. Code, p. 309, art. 19. When recorded, 14th October, 1867, the bond had not been acknowledged by Mrs. Lockhart nor proved by a subscribing witness as to her husband. It did not, therefore, acquire any of the virtues and privileges which attach to instruments authorized to be recorded.

But, on the 20th of August, 1870, the acknowledgment of Mrs. Lockhart appears to have been taken before one Tankersly, a justice of the peace.

It is insisted that the bond is not obligatory on Mrs. Lockhart because it was not acknowledged by her husband. "A husband and wife may, by their joint deed, convey the real estate of the wife, but the deed must be acknowledged," as directed. Code, p. 307, art. 4. In the same chapter, p. 309, art. 19, the deed may be acknowledged or proved by a witness. In the chapter treating of marriages, divorces and separate property of married women, it is provided (art. 23, pp. 235–'6): "Nor shall the wife's separate property be sold, conveyed or incumbered by the husband, unless the wife shall join in the conveyance and acknowledge as required," etc. The statutes do not require that the husband shall acknowledge the deed; as to him, it might be recorded on proof by a subscribing witness.

The first instruction for the defendant was erroneous. There was nothing in the testimony tending to prove, between the parties plaintiff, or any of them, and the defendant, the relation of landlord and tenant. Camfield entered as vendee and purchaser; his possession was in that right. There was no tenancy as lessee, express or implied; therefore a notice to surrender

possession was not necessary. McClanahan v. Barrow, 27 Miss. 673.

But it is said by the defendant in error, that no injury could or did result to the plaintiffs from this statement of the law to the jury. Doubtless the same argument was advanced to the jury as has been made here : that, if the title bond conferred no right upon Camfield, then he entered and continued to hold with the consent of Lockhart and wife, and thereby established a tenancy from year to year. Such must have been the view of law entertained by the circuit judge. There being no proof of notice to quit, the effect was to cut off at once the plaintiffs' right to recover, although their right of possession, on all other grounds, might have been complete.

As the case will be remanded for another trial, it is hardly necessary to consider the questions raised on the testimony, as all of those questions can easily be obviated on the next trial.

It may be remarked, however, that inasmuch as the title bonds had been on a former occasion produced under the notice, it was an acquiescence on the part of the plaintiffs that that was the paper meant in the notice. It would be a surprise on the other party, if the plaintiffs, having the paper, should decline to produce it on the ground that it was called in the notice a deed. The plaintiffs were not deceived or misled by the notice, but construed it as requiring the production of the title bond. The bonds used on the trial, as the record shows, were not copies from the county custodian of such records.

As to whether Mrs. Lockhart acknowledged the bond, " separate and apart from her husband," was a question of fact to be submitted to the jury. The certificate of the justice of the peace stands until disproved ; it is *prima facie* true. Whether that *prima facie* case has been overcome or not, depends upon testi-

mony, its weight and credibility, whether or not it satisfies the judgment and conscience of the jury. The charge of the court was, "that the certificate of the sworn officer, required by law, is entitled to equal credit with the statement of a disinterested witness." It has often been observed that the instructions of the court ought to have a foundation in the testimony. Their office is to lay before the jury the law applicable to the facts. If the court undertakes to aid the jury in putting a proper estimate upon the testimony, it should be so done as not to mislead. It so happened that all the witnesses who testified on this point of "private examination" were parties plaintiff. The justice of the peace was not permitted to impeach his own act. No disinterested witness was examined; none were present at the time of the acknowledgment. It was not possible, therefore, to produce that sort of testimony; it was of no profit to the jury in this case to tell them that the "certificate" was of equal credit to the statement of a disinterested witness. What would have been of value to them; and, adapted to the testimony they were to consider, by what rule or standard, if there be one, shall the evidence of interested witnesses be weighed? The rule laid down in the Code (1857), 510, art. 190, is so just and reasonable, that although not brought forward in the last revision, must, in the nature and fitness of things, still prevail, to wit: "The jury * * shall give such weight to the testimony of parties and interested witnesses as, in view of the situation of the witnesses, and other circumstances, it may be fairly entitled to." Parties are competent, their testimony may be satisfactory to the jury, and conduce to conviction. If, in view of their interest and the other circumstances, the jury believe them entitled to credit, and find accordingly; if for other reasons the verdict cannot be impugned, it ought to stand.

Mrs. Lockhart and her brother-in-law were made competent to depose to any facts pertinent to the issue. Although the only witnesses to a particular fact, the jury might be convinced that the fact ·was proved, or in other words, might believe them credible, and their statements true. It belonged exclusively to the jury to determine whether they were satisfied, from the testimony of these parties, that Mrs. Leonora Lockhart " was not examined separate and apart from the husband;" whether their statements were true, and not the certificate of the justice of the peace. If the proposition contained in this instruction be correct, then, if a disinterested witness swears that he was present, and no such examination was made, the jury must find in favor of the truth of the certificate; for the charge is, that the certificate of the officer is of " equal credit with this statement of a disinterested witness." The affirmative was upon the plaintiffs to overcome the certificate. Opposing testimony, which is only of " equal credit," leaves the evidence equipoised, and the plaintiff must fail. It is not true, as a proposition of law, that a jury may not find a verdict adverse to the certificate, on the testimony of a single disinterested witness. Such a variety of circumstances and such consistency may pervade the testimony as. to compel belief. The witness may be of such integrity and character, and depose with such fairness and intelligence, that the understanding yields assent to the truth of his narrative. Belief is not a matter of volition; the mind of the candid and unprejudiced, in obedience to its own laws, is compelled to give credence to a truth supported by sufficient testimony. In the state of the testimony before the jury, the instruction was calculated to mislead.

*Judgment reversed and venire facias awarded.*