### ELLIS TURLEY *v.* JOHN I. INGRAM.

**Verdict of Jury — When it Should be Set Aside.**

> If the verdict of a jury is contrary to the evidence and the instructions of the court it should be set aside and a new trial granted by the court.

**Instructions of the Court — On Weight of Evidence.**

> In a suit on a note where defendant files a set-off and there is a conflict in the evidence as to whether the defendant has not already had credit for the items claimed it is error for the court to instruct the jury to allow defendant credit for same without qualifying it by requiring the jury to determine between the witnesses as to whether in fact the same had not already been accounted for, because it is a charge on the weight of the evidence.

**Same — When Error to Refuse.**

> Where a defendant sets up the Statute of Limitations to a claim against him and also files a set-off to the demand it is error to refuse an instruction for plaintiff that the Statute of Limitations applied to the set-off as well as to the debt sued on.

Ellis Turley brought this suit against John I. Ingram, in the Circuit Court of De Soto county on a note for $1,152.68, payable to him, signed Ingram & Co., per N. P. Turley, agent, dated

---

1.

If the jury find *against* the great preponderance of evidence a new trial will be granted. Sims *v.* McIntyre, 8 S. & M. 324; McQueen *v.* Bostwick, 12 S. & M. 604.

March 18, 1879, due one day after date. The suit was filed September 12, 1882. Defendant filed a plea of *non est factum,* the Statute of Limitations of three and six years were also pleaded and payment. The cause was tried at the March term, 1883, and resulted in a verdict for plaintiff for $1,125.15, but defendant's motion for a new trial was sustained and a new trial granted. The cause was again tried in September, 1883, and resulted in a verdict and judgment for plaintiff for $137.75, and from that judgment plaintiff appeals.

The evidence was in substance as follows: N. P. Turley and

The high court will not grant a new trial, upon the ground that the evidence does not sustain the verdict, except in a clear case; but where instructions were given in the court below, and the jury have clearly mistaken the law, a new trial will be granted. Leflore v. Justice, 1 S. & M. 381.

If the jury upon questions of fact submitted to them find a verdict which is contrary to law and evidence, the court will grant a new trial. Tunstall v. Walker, 2 S. & M. 638.

But it will be granted where the evidence considered with reference to the issue submitted to the jury does not sustain the verdict. Otey v. McAfee, 38 Miss. 348.

A new trial will be granted where there is no evidence to sustain the verdict. Crocket v. Young, 1 S. & M. 241.

A verdict will be set aside on consideration of the facts alone if they fail to sustain it. Monroe v. State, 71 Miss. 196, 13 So. 884; Harris v. State, 71 Miss. 462, 14 So. 266.

In a civil case, where there is such a conflict of evidence that the mind cannot repose with entire confidence upon a conclusion in favor of either party, a verdict will not be disturbed in this court, no error of law having intervened. Bank v. Moss, 63 Miss. 74.

A finding on controverted facts, though it may be unsatisfactory, will not be disturbed, if it cannot be said that there is no evidence to support it. Railroad Co. v. Doggett, 67 Miss. 250, 7 So. 278.

A verdict will not be disturbed unless it is manifest from the whole record that it is clearly wrong, or unless misdirection or other apparent error may have produced it. McAlexander v. Puryear, 48 Miss. 420; Buckingham v. Walker, 48 Miss. 609.

A decree manifestly against the evidence by deposition on which it is based will be reversed on appeal. Mississippi Cotton-Oil Co. v. Starling-Smith Co., 23 So. 648.

Where, having been directed to find for plaintiff, a jury assessed his damages at $100, the full amount asked, the verdict will be set aside where the evidence as to the value of the two horses killed for which damages were awarded is that they were worth from $30 to $50, and in the same action the jury found the value of twenty-six other horses of the same class at $900, since the finding is evidently the result of a mistake as to the effect of the judge's instruction. V. S. & P. R. R. Co. v. Lawrence, 78 Miss. 86, 28 So. 826.

John I. Ingram formed a partnership in 1871 and went into the mercantile business, Ingram furnishing the money and Turley the experience.   Turley was to manage and look after the business.   The style of the firm was Turley & Ingram.   N. P. Turley soon after employed plaintiff, his brother, to clerk in the store at a salary of $300 per year and his board.   He was to keep a horse which was to be fed by the firm and it was to be used in his attention to their business.   While thus employed Ellis Turley acted as deputy sheriff and was paid some money for his services as such.   Defendant Ingram claimed credit for this money.   He

The verdict of the jury will not be reversed, on account of being contrary to the evidence, unless it most convincingly and indubitably appears to be so.  King v. Rowan, 34 So. 325.

2.

The court has not the power to charge on the weight of evidence; yet it has the power to judge of, and charge upon, the tendency of evidence, and the exercise of this power is essential in the administration of justice.  It is a power to be exercised with the greatest caution, and only where there is no room for doubt, but when the evidence wholly fails to make out the plaintiff's case, and when it does not tend in any justly legal view to establish it, it is the duty of the court to so instruct the jury.  Garnett v. Kirkman, 33 Miss. 389; Perry v. Clark, 5 How. 495; Frizell v. White, 5 Cush. 198; Carmichael v. Bank of Pennsylvania, 4 How. 567; Stephenson v. McReary, 12 S. & M. 9; Jennings v. Thomas, 13 S. & M. 617; Dunlap v. Hearn, 37 Miss. 471; Fairly v. Fairly, 38 Miss. 280; Gilliam v. Moore, 10 S. & M. 130.

Instructions that single out and emphasize parts of the testimony are erroneous as being on the weight of evidence.  Levy v. Holberg, 71 Misc. 66, 14 So. 537; Prine v. State, 73 Miss. 838, 19 So. 711.

Instructions for defendant which single out facts in evidence and inform the jury that they alone are not enough to warrant conviction are erroneous because they are on the weight of evidence.  Burt v. State, 72 Miss. 408, 16 So. 342.

But an instruction that "a confession freely and voluntarily made is among the best evidence known to the law, and that if the jury believe from the evidence that the defendant made such a confession, then they are authorized to consider it in connection with the other evidence," etc., is reversible error, such an instruction being upon the weight of evidence and a clear invasion of the province of the jury.  Thompson v. State, 73 Miss. 584, 19 So. 204.

On the trial of a claimant's issue an instruction which enumerates certain facts and announces that they are to be taken into consideration by the jury "as tending to show that the property did belong to defendant" is erroneous, because on the weight of evidence.  French v. Sale, 63 Miss. 386.

And so an instruction that certain facts stated in the instructions are circumstances "indicating" a fraudulent intent, is erroneous, as being on the weight of the evidence.  Ladnier v. Ladnier, 64 Miss. 368, 1 So. 492.

In an instruction in a criminal case, instead of referring to certain cir-

also claimed credit for the extra horse feed, the evidence showing that plaintiff frequently had more than one horse which he fed out of the crib of the firm. In January, 1878, the firm of Turley & Ingram was dissolved and John I. Ingram assumed all liabilities and took the entire assets of the concern and employed N. P. Turley to manage the business for him.

The evidence further shows that in 1873 a settlement was made with Ellis Turley and the note of Turley & Ingram was given to him for $266, payable one day after date, and in January, 1874, another settlement was had and the note of Turley &

cumstances as " evidence " of defendant's guilt, it is better to use the language " tended to show the prisoner's guilt." Nelms v. State, 58 Miss. 362.

The jury, not the court, must determine the relative value of admissions. Accordingly, an instruction which declares that admissions, if fully and deliberately made to a disinterested person, are of weight, but that casual declarations made in idle conversation do not deserve much consideration is erroneous as being on the weight of evidence. Johnson v. Stone, 69 Miss. 826, 13 So. 858.

Instruction as to where the burden of proof lies, and directing a verdict according to the preponderance of the evidence, is proper. Meyer v. Blakemore, 54 Miss. 570; Lockhart v. Camfield, 48 Miss. 470.

Though the court may not charge upon the weight of evidence, it is not error to assume as true a fact which is fully established and as to which there is no controversy. Carberry v. Burns, 68 Miss. 573, 9 So. 290; Railway Co. v. Phillips, 70 Miss. 14, 11 So. 602; see also, Odeneal v. Henry, 70 Miss. 172, 12 So. 154; Patrick v. Carr, 50 Miss. 199; Lockhart v. Camfield, 48 Miss. 470; Landrum v. State, 63 Miss. 107; Meyer v. Blakemore, 54 Miss. 570; Kimbrough v. Ragsdale, 69 Miss. 674, 13 So. 830; Dawson v. State, 62 Miss. 241.

Where the defense to an action against the administrator of the maker of a note was *non est factum* it was error to instruct that the evidence of experts who had testified as to the maker's signature was " intrinsically weak, and ought to be received and weighed by the jury with great caution," as on the weight of the testimony. Coleman v. Adair, 75 Miss. 660, 23 So. 369.

What weight is to be given testimony and what inferences can be logically deduced from it are questions submitted, under the statute, solely to the judgment of the jury. Maston v. State, 83 Miss. 647, 36 So. 70.

3.

Where there is evidence tending to establish a material fact it is error to refuse instructions as to its effect, although the weight of evidence may tend to disprove it. Levy v. Gray, 56 Miss. 318; Nichols v. State, 46 Miss. 284; Hursey v. Hassam, 45 Miss. 133.

Defendant held to have each of his defenses fairly presented and submitted to the jury under proper instructions. Crow v. Burgin, 38 So. 625.

Ingram was given to him for $210, payable one day after date, each of the notes bearing 10 per cent. interest.

No other settlement was made by Ellis Turley with Turley & Ingram or with Ingram & Co., until March 18, 1879, when Ellis Turley and his brother N. P. Turley got together one night in the store and N. P. Turley executed the note to Ellis Turley sued on. Both the Turleys testified that Mr. Ingram knew nothing about the settlement or the note. N. P. Turley stated that he never informed Mr. Ingram that the note had been given to Ellis Turley. The two notes formerly given, they testified, were surrendered. Ellis Turley testified that he left the next morning after the settlement and went to Missouri and stayed until the fall of 1880, when he came back but never mentioned the note to Mr. Ingram until in the summer of 1881, when he made a demand on Ingram for the money, but did not show him the note; that Mr. Ingram did not deny that he owed the money but claimed that there were some credits he was entitled to and stated that if they were allowed he would pay the balance.

Ingram testified that he never gave N. P. Turley any authority to act for him except as a mere agent to carry on the business of Ingram & Co., and to collect the debts due to Turley & Ingram and their liabilities. N. P. Turley stated that he was employed as agent to carry on the new business and to "settle up the affairs of the old concern of Turley & Ingram, to collect the debts due it and pay the old debts; that was the authority given me." Ellis Turley testified that he was employed as deputy sheriff part of the time he worked for Turley & Ingram, but he paid all fees collected, as such, into the firm business.

The opinion of the court contains a further statement of the facts.

APPEALED from Circuit Court, De Soto county, A. T. ROANE, Judge.

Reversed and new trial awarded, March 3, 1884.

*Attorney for appellant, J. B. Morgan.*

*Attorney for appellee, T. W. White.*

Brief of J. B. Morgan:

The attention of the court is especially called to plaintiff's charges Nos. 4 and 5, and the state of facts to which they were directed.

N. P. Turley said, " I was a partner in the firm of Turley & Ingram, beginning in 1871 or 1872." " The firm of Ingram & Turley was dissolved in January, 1878, but I continued in charge of the business exercising the same powers over it that I exercised when a partner. I had been from the beginning sole manager of the entire business." He also says, "At the end of 1877, the firm was dissolved (or Turley and Ingram), and I went out of the house. * * * Mr. Ingram then went on in business under the firm name of Ingram & Co. He was to have all the assets and to pay all the debts of the old concern of Ingram & Co. I was employed as agent to carry on the new business and to *settle up* the affairs of the old concern of Turley & Ingram, to collect the debts due, and to pay the old debts. * * * I employed Ellis Turley as a clerk on the same terms that he had been employed by the old firm." " Ellis Turley (plaintiff) was fully acquainted with all the matters connected with the old firm." He gives a detailed account of the debt due plaintiff, and concludes with these words: " Making, according to our calculations, $1,152.68, and I executed Ingram & Co.'s note, as agent, for this amount."

Ellis Turley says: " The note made by my brother, N. P. Turley, was for the amount due me after paying me at the time $193 or thereabouts, and was accepted for my claim against the firm of Ingram & Turley, and Ingram & Co.

The charge was intended to instruct the jury on this state of facts and is in these words:

" The jury are instructed that when persons have been engaged in business for a number of years as partners buying and selling goods on credit and the firm is dissolved by mutual consent, and all the assets are sold to or turned over to one of the partners on his agreement to pay all the debts of the concern, then as between the partners and those accepting the arrangement such a contract is lawful and binding on the partner who thus assumes the debts of the firm, and he can appoint an agent to attend to this business, and such agent may enter into

settlements, ascertain balances, give promissory notes for the same, bearing interest according to the custom of the merchants of the country in transacting such business and his principal will be bound thereby; provided he acts within the scope of the authority given by his principal."

And by charge five on this point the jury were further instructed that:

" The principal is bound by the acts of his agent within the scope of his authority, and this may be *either express or implied.* In determining the authority of the agent to bind his principal in a given case, the jury may look to the nature and character of his employment, and if the act done was necessary to the proper transaction of the business confided to him, then the agent had the authority to do it, and his act will bind the principal."

Again the attention of the court is especially directed to plaintiff's third charge and the state of facts it was intended to apply to.

This note sued on was executed on the 18th day of March, 1879. Plaintiff then left the State and returned in the fall of 1880. It will be borne in mind that plaintiff's $210-note was due January 1, 1874, and would be barred January 1, 1880; that his account due January, 1877, for 1876, would likewise be barred January 1, 1880, and so on with the others, but for the provisions of section 2671 of the Code, and his reliance upon the authority of N. P. Turley to settle with him and give the note, or in any event to state an account. In other words, strike out the note sued on and then when this suit was brought, September 12, 1882, the whole of plaintiff's demand was barred. But none of these were barred when plaintiff first presented his note to defendant and he could, and would have sued, had the act of N. P. Turley been repudiated then   *   *   *.

The instruction is in these words: " It is the duty of the principal to disaffirm the act of his agent promptly when informed thereof; and the jury are instructed that if the defendant knew of the act of the agent, and by silence acquiesced therein, then he will not be permitted to repudiate it, when to do so would place the creditor who relied on the authority of the agent at a disadvantage.

And if the jury believe from the evidence that defendant

knew of the execution of this note and acquiesced therein, then he will not be permitted to repudiate the act after a year of silence, when the same would injure the plaintiff."

The act of N. P. Turley was never repudiated until at the trial term of this cause and after full consultation with his attorney, he was permitted to file a plea of "*non est factum*" and then invoke the statutes of limitation, when plaintiff's claim was wholly barred. None of his claim was barred when plaintiff presented the note in 1880 or 1881. None of it was ever barred except the $260-note given in 1873, and even if N. P. Turley had no authority to include this note in March, 1879, it would not affect the balance of the note, any more than if he had made that amount of mistake in his addition. The note would have failed to that extent only. As the jury reduced plaintiff's debt about $475, they may have struck out the whole note for $260. In any event, they had the whole evidence before them and much of it showing that Turley's agency was coextensive with that of a partner. The witnesses say that there was no difference in his powers before and after the dissolution. \* \* \*

It is submitted that the jury did not disregard the foregoing instructions, at least, and that they were pertinent to the issue joined, and justice was done.

Defendant's third charge is erroneous in asserting that express authority is necessary to waive the statutes of limitation, or increase the rate of interest. This may be either express or implied. The true rule is announced in plaintiff's fifth charge. The charge is calculated in any event to mislead the jury.

Defendant's fourth charge is erroneous as applicable to this case, and should have been modified. The evidence showed a continuous course of dealing that brings the case fully within the statutory rule.

Defendant's fifth and sixth charges are erroneous. They denounce as fraudulent and void any acts of the two, without charging any combination, agreement, or intention of the parties to cheat or defraud their common employers. \* \* \*

The plaintiff in support of his first assignment of error refers the court to Graham & Waterman on New Trial, Vol. I, p. 380, and cases cited, especially, Ashley *v.* Ashley, p. 380; Sevain *v.* Hull, 380; Lewis *v.* Peak, 382; Baker *v.* Briggs, 388.

The verdict will not be set aside where there has been evidence on the point at issue on both sides. Nor will the verdict be set aside where substantial justice has been done. Same book, and cases cited. See p. 394 for statement of the rule. * * *

On the second trial, it is insisted by plaintiff: First, That the jury found contrary to the law and the evidence. On this point, counsel for plaintiff can only ask the careful consideration of the whole case which is much fuller than on the first trial. The itemized accounts from defendants books are not brought forward, because they were considered part of plaintiff's declaration under the agreement and on the trial.

The court erred in modifying plaintiff's second charge. The court was asked to charge the jury " that the whole is equal to the sum of all its parts." The court was willing to instruct the jury that a principal might confide to an agent power to do anything in the scope of his business that he himself might do, and that the jury are to judge from the whole evidence of the powers the agent was authorized to exercise. But if he propose, in the scope of this business to do what his principal could do, renew a debt barred by the statute, then in addition to all the powers his principal can confer on him to do as he would or could do himself, he must have express authority for this class of business.

The court erred in refusing plaintiff's charge number four. Defendant's set-off shows items of account for 1873–5, etc. Defendant having asked and obtained charges on the statute of three and six years. Plaintiff asked the benefit of the rule as to defendant's *set-off* to nearly all of which the statute applied. This charge was refused at first by reason of section 2687 of the Code. It was then put in its present shape so as to antedate the Code and bring the whole before the court for construction. The meaning of section 2687 of the Code of 1880 is to apply items of set-off as *payments* at the time and prevent great injustice. The rule applied by the court below continues the injustice legislated against, but changes it from the defendant to the plaintiff. Whether the statute applies or not is made to depend upon who is plaintiff. If Ingram had sued Turley, the whole of his claim would under this rule be barred. As it is, none of it is so held. This is not the law, and plaintiff was injured.

Defendant's first charge is erroneous. It instructs the jury

that if the $1,152-note (the one in suit) has included in it any note of Turley and Ingram, or transaction, which of course embraces accounts, then the note is void unless express authority was had from Ingram. This is not only erroneous, but is in direct conflict with plaintiff's fifth charge, where the jury are instructed that this authority may be implied. The true rule is stated in plaintiff's charge, and the effect of this is to destroy it.

Defendant's ninth charge is erroneous. It is a charge directly upon the weight of evidence. They are instructed to allow defendant credit for any sum that plaintiff earned as deputy sheriff. * * *

The plaintiff asks the court to reinstate the first verdict and for judgment here. If not, then that the cause be reversed and remanded.

Brief of T. W. White:

The first question presented to the court is, did the court below err in setting aside the verdict rendered on the first trial, as is alleged by plaintiff as his *first* assignment of error.

The testimony of the two Turleys alone would, we think, show so much corruption and illegality as would require any court to set aside a verdict rendered on it. But when to this is added the testimony of Ingram & Nicholls and Cooper Maxwell, the preponderance against the verdict is so great that it will not stand for a moment. The whole proof, with any opposing testimony shows that N. P. Turley had no right to give the note sued on. That as a member of a dissolved partnership he could not waive the Statute of Limitations or turn a 6 per cent. into a 10 per cent.; that as agent he could not do it, except with express authority to do so; that as the agent of Ingram & Co., he had no right to make such a note, and that, therefore, the plea of *non est factum* was good. Nor is there anything in the testimony to show that Ingram ever gave him any such authority, in his testimony he speaks of himself as " agent."

It will be observed that N. P. Turley, though the leading witness for plaintiff, nowhere testified that he had any express authority to waive bar of limitation, to increase rate of interest, either as agent for Ingram or as agent to settle up old firm.

Nor could Ellis Turley have any reason to think he had such

authority. The two brothers were coagents of Ingram and both knew his exact relation to them and their firm. It is claimed. that N. P. Turley was held out to the world as fully empowered to do anything. There is no proof of that. The proof to Turley himself was that " he was agent to settle up old business and carry on the new," and as such agent he could not give the note in question, and Ellis could not be mislead by it.

Acquiescence on the part of Ingram is invoked. The proof shows no acquiescence on his part. He repudiated the note when first brought to his notice in 1881, though it was not shown him, and he did not know whether it was signed by " Turley & Ingram " or in the manner it was; he did not know its date or whether it purported to be signed before January, 1877, or not. Hence he offered a compromise; he was in very low health, thought he had consumption, and had not long to live; had been in bad health for several years and did not want to leave such a claim unsettled.  *    *    *

As to plaintiff's second assignment of error, the testimony on second trial being much the same as on the first, but in some respects more favorable to defendant, I assume that plaintiff does not claim a new trial because the verdict is against the evidence.

Plaintiff assigns for third error that the court below modified charge number two, asked by plaintiff. We are satisfied the modifications made by the court are correct and coincide with the law and will not argue the point further.

Plaintiff assigns for error the modification made by the court to third charge. These modifications are proper.

Appellant's fifth assignment of error can have no application to *this* case and was clearly not the law. The charge would make the court say — that all the items of defendant's set-off more than three years old (excluding plaintiff's absence in Missouri) could not be considered in this suit. This is in the very teeth of the statute, section 2687, which says, that such shall be used if held by the defendant before they were barred. The proof shows that every item of the set-off was so held.

Plaintiff assigns for error the giving by the court of the first charge. This charge is: " If Ellis Turley held a note on Turley & Ingram, due January 8, 1873, then such note was barred by

the statute on 11th of January, 1879, and if the firm of Turley & Ingram was then dissolved, Turley had no authority to revive said note, but the same is no longer binding on Ingram."

This is complained of as a charge on the weight of evidence. This is a mistake as to the object of the charge, which only went to the extent of saying that after the dissolution of the partnership Turley had no right as partner to sign a note which would revive one already barred by the Statute of Limitation. The court had offered to give two charges which expressly stated that Turley might *as agent* waive the statute and revive a note already barred " if he had express authority to do so," which plaintiff had declined.

The court had also charged on the former trial that an *agent* might do the same thing, and these charges were had by the plaintiff on this trial.

The second charge for defendant, which is objected to, states the law correctly and makes the distinction between the signing of a note by an agent and the signing of a note by a partner of a dissolved partnership. It states that if Turley signed the note sued on as the agent of Ingram and included in it any note or transaction which belonged to the dissolved partnership, then the note was made without authority and is void unless he had express authority from Ingram to execute the note.

The second branch states that if Ellis Turley held a note on the firm of Turley & Ingram, due January 8, 1873, that the firm was dissolved in 1878, and that afterward N. P. Turley a *partner* of the dissolved firm, on 18th of March, 1879, when said note was barred by the Statute of Limitations, included it in the note sued on, such act was without authority and the note was void as to the amount of said barred note, and there is no liability on the part of Ingram to pay the note thus barred.

The proof of Turley himself was that he was only an agent to settle up the old business, collect debts, and pay liabilities. " If so," says the court, " you are not authorized to sign any note to waive the Statute of Limitations. If you are the agent of Ingram & Co., you cannot as such agent make a note and include in it notes and transactions of the former firm of Turley & Ingram, and if you do the act is void." If the firm of Turley & Ingram was dissolved in 1878, Turley, one of the partners, had not right

to revive a note already barred or include it in another note, and if he does, it is void to the extent of the barred note so attempted to be revived.

Plaintiff objects to charge nine for defendant. It is insisted that the charge was correct. If plaintiff kept horses that he had no right to keep at the expense of defendant, then certainly he ought to pay what it was proved to be worth; and if, while in the employ of defendant, he earned money as deputy sheriff, riding a horse fed by defendants, whatever money he so coined, belonged to defendant, his employer.  *  *  *

COOPER, J., delivered the opinion of the court.

Unless the defendant was bound by the note sued on, the debt due to the plaintiff was barred by the Statute of Limitations, and no recovery could have been had. Whether the plaintiff could recover in whole or in part on the note depended on three questions:

1. Did E. P. Turley, as agent of Ingram in winding up the affairs of Ingram and Turley, have authority to bind Ingram by the execution of a note for the debts of that firm? If he did have such authority the plaintiff was entitled to recover so much of the note as was given for debts not barred by limitation at the time of its execution.

2. Did E. P. Turley have authority, as the agent of Ingram in conducting the firm of Ingram & Co., to execute a note for the debt due by Ingram & Co.? If he had such authority, but did not have authority to give a note for the debt due by Ingram & Turley, then the plaintiff was entitled to recover on the note so much as was due him by the firm of Ingram & Co.

3. Had Ingram ratified the act of Turley in executing the note sued on?

By the first verdict the jury responded in the affirmative to the first and third interrogatories. This verdict was set aside by the court. This verdict we think was contrary to the evidence and the instructions of the court, and the court rightly refused to permit it to stand. It is evident that the jury which returned the second verdict answered the first and third interrogatories in the negative and the second in the affirmative.

We cannot say that this idea was opposed by the evidence. This verdict was for less than the sum which the plaintiff's evi-

dence showed was due by Ingram & Co., to him, and the inquiry is whether the jury was or might have been controlled by erroneous instructions given for defendant, or whether plaintiff was refused instructions he should have received. Looking to the testimony adduced we see that the defendant claimed credits against plaintiff's demand: 1. For fees earned by the plaintiff in acting as deputy sheriff while in their employment. 2. For extra horse feed furnished to him by defendant. The plaintiff testified that he had paid the firm all fees received by him as deputy sheriff; the defendant introduced evidence tending to prove the contrary. The court charged the jury that the defendant must be allowed for all such fees received by the plaintiff, without qualifying this charge by instructing the jury that it was to determine between the witnesses as to whether in fact these fees had already been accounted for, and if such was the fact, then the defendant having already had the fees could not again have credit therefor. As given, the instruction in effect told the jury to find the fact to be as testified by the witnesses for the defendant, and was a charge on the weight of evidence.

The plaintiff asked the court to instruct the jury that the Statute of Limitations applied to set-off as to the debt sued on, which instruction was refused. This was error. If the plaintiff's demand against Ingram & Turley was barred by limitation, so also was theirs against him for the fees received by him and for the horse feed furnished.

For these errors, the judgment will be reversed and a new trial awarded.